## DONALD M. BOUTON ET UX. *v.* THE POTOMAC EDISON COMPANY

[No. 96, September Term, 1977.]

*Decided March 10, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Robert L. Ferguson, Jr.,* with whom were *Allen, Thieblot & Alexander* on the brief, for appellants.

*Kenneth C. Lundeen,* with whom were *Smith, Somerville & Case* and *Philip J. Bray* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

This appeal concerns an eminent domain action [1] in the Circuit Court for Frederick County by which The Potomac Edison Company (the Company) obtained, by an easement in perpetuity, land in Frederick County owned by Donald M. Bouton and wife (Bouton) [2] for the route of an overhead electric transmission line, designed to carry in excess of 69,000 volts,[3] to run from its Carroll Station in Carroll County to its proposed Mt. Airy Station in Frederick County. The inquisition of the jury awarded Bouton $24,200 as damages for the easement. Maryland Rule U 19 g. Bouton appealed from the final judgment entered thereon to the Court of Special Appeals. We issued a writ of certiorari before decision by the intermediate court.

## I

A prerequisite to the exercise of the Company's right of eminent domain was that it obtain from the Maryland Public Service Commission (the Commission) a certificate of public convenience and necessity for the construction of the line. Maryland Code (1957, 1975 Repl. Vol.) Art. 78, "The Public Service Commission Law" (the Law), § 54A and § 54B (a). Upon application by the Company, the Commission granted the certificate by its order No. 61016, issued 13 November 1974 after due compliance with the Law as to application, notice, public hearing and factors to be considered. *See* § 54A and § 54B (a) and (d).

---

1. See Maryland Code (1974) Real Property Article, Title 12 and Maryland Rules, Subtitle U.

2. The Company's petition for condemnation also named as defendants the Farmers and Mechanics National Bank, mortgagee of part of the land, and Fillmore Runkles and Nancy A. Runkles, his wife, tenants of the land. Subsequently, the bank and the Runkles were dismissed as defendants by order of the court upon motion by the Company.

3. Originally the line was to carry 138 kv. This was later changed to 230 kv, thereby increasing the width of the right of way needed from 100 feet to 125 feet.

In granting the certificate to construct the line, the Commission ordered:

"(1) That a Certificate of Public Convenience and Necessity be, and it is hereby, granted to [the Company] for the construction of a 230 kv transmission line as set forth in the application, except as hereinafter modified.

"(2) That the following conditions are made part of said Certificate of Public Convenience and Necessity:

\* \* \*

"(g) That with respect to the area where the proposed transmission line passes in the vicinity of the Boy Scout Camp, the Company be required to make a modification of its proposed line routing so as to place approximately an additional 100 feet between the transmission line and the pond; the movement of the line, in order to effectuate this modification, should be confined to and remain within the wooded area southwest of the pond. . . ."

On 22 July 1975 the Company wrote Wilson B. Stringer, Executive Assistant-Chief Examiner of the Commission (the Examiner) that it had modified the proposed line routing and that based upon its belief that the route modifications "comply fully with the conditions stated in the Commission certificate," it was moving forward to acquire right of way and to construct the line. We observe that the authority of the Commission to prescribe the exact location of the line route is not raised by the parties and we do not consider it.

## II

Subsequent to the filing of the initial pleading by Bouton in the condemnation action, the Company filed a motion for summary judgment on the issue contained in paragraph THIRD of its petition for condemnation. Maryland Rule 610

a 1 and 3. Paragraph THIRD stated that the Company was fully authorized to negotiate for and to buy from the owners of real estate in Maryland a right of way or easement in perpetuity for transmission and power lines and that, in the event it was unable to agree with such owners on the acquisition of such estate or interest, it had authority to exercise the power of eminent domain and to condemn such estate or interest for its use in perpetuity as provided by Maryland Code (1974) Real Property Article, Title 12, "Eminent Domain." The Company declared that there was no genuine dispute as to any material fact and that it was entitled to judgment as a matter of law.[4]

In their answer to the motion, Bouton, asserting that there was dispute as to material fact, sought a denial of the motion on two grounds. The first ground, that the Company did not have the basic power to acquire property by condemnation, is not raised on appeal, and we do not consider it.[5] The second ground was that, assuming the Company possessed the basic power to condemn, it had no authority to acquire by the exercise of its right of eminent domain the easement which it sought over Bouton's land. The Company did not have such authority, the answer asserted, because it was "guilty of exercising bad faith and abuse of discretion in the location of the proposed transmission line route on [Bouton's land]," because "the transmission line route approved by the [Commission] was modified by the [Company] in accordance with the request of a private property owner for a strictly private purpose, without notice to [Bouton]," and because Bouton was "deprived of due process of law and equal

---

4. In support of the motion the Company cited the court's order, issued by another judge on 7 September 1976, in the case of the Company v. Mater and wife declaring that the Company possessed said power of eminent domain. The trial judge did not rely on the decision in the case cited. He observed: "[T]he mere fact that [the other judge] has ruled a certain way on a motion for summary judgment doesn't bind me."

5. As to the first ground, Bouton presented and argued below that the Company lacked the power to condemn because "the constituent corporations from which it derives its power to condemn through successive consolidations, failed to have the successive consolidations approved by the legislature," and because "the predecessor corporation from which it derives its power to condemn, the Westend Gas & Electric Company of Frederick County, ceased to enjoy the power of condemnation as of June 21, 1924."

protection of the laws when an ex parte hearing was held at the [Commission] to consider modification and relocation of the proposed transmission line route on [Bouton's land] and adjoining property."

The Company's position, which it presents on appeal and which it consistently relied upon below, is simply that "[h]aving failed to appeal the Commission's order approving the location of the transmission line, Bouton may not collaterally attack that order in condemnation proceedings." This position is unsound for two reasons. First, it is bottomed on the incorrect premise that the Commission order of 13 November 1974 approved the line route which was the basis of the easement sought to be condemned. The order did no more than approve the line route as originally proposed by the Company subject to the modification to be made by the Company pursuant to condition (2) (g). It is true that the Examiner sought a review of the modified line route by the Engineering Division of the Commission and received a memorandum from the Chief Engineer which concluded, on the basis of a review by a staff engineer, whose memorandum was attached, that "[w]e have determined that the modification as proposed by Potomac Edison is in compliance with paragraph (g) of Order 61016." In argument on the motion for summary judgment the Company's attorney stated: "[W]e later got a letter from the Public Service Commission saying, 'The rerouting is in accordance with the Public Service Commission order.' " The letter mentioned is not in the record before us. The statement of the Chief Engineer was only an expression of his opinion, and even if shared by the Examiner, is not a determination by the Commission itself.[6] In any event, it is obvious that the Commission order of 13 November 1974 may not be considered as approving whatever modification of the original route the Company believed to be in compliance with the condition, or, specifically, as approving the line route as here subsequently modified. We have not been referred to, nor do

---

6. The Commission formerly consisted of three commissioners. Code (1957, 1975 Repl. Vol.) Art. 78, § 5. The number of commissioners was increased to five by Acts 1976, ch. 756.

we find in the record, a final order or decision by the *Commission* confirming that the modified route fulfilled the condition. *See* Code (1957, 1975 Repl. Vol.) Art. 78, § 20.[7]

The second defect in the Company's position arises from its view that Bouton is collaterally attacking the order of 13 November 1974. The order was duly issued and properly granted the certificate in compliance with the Law. Bouton did not seek judicial review of it in the administrative proceedings; he did not attack it below in the action before us; he does not challenge it on appeal. In short, there is no dispute that it stands valid. Bouton's point, as he expressed to the trial court, is that "the transmission line route the [Company] seek[s] to condemn in this case is not in fact the transmission line route approved by the Public Service Commission as to [Bouton's] property" under its valid order granting the certificate to construct the line.

We believe that the true issue in this case is whether the modified line route (the basis for the easement here sought) was in conformance with condition (2) (g) of the Commission order granting the certificate of public convenience and necessity (the prerequisite to the exercise of the Company's right of eminent domain). Inherent in the issue is that the order was valid and final. Neither the failure of Bouton to challenge its validity nor his acknowledgment that it was valid precludes, in any event, Bouton from defending the condemnation action on the ground that the modified line route was in violation of the order. Of course, if the modified line route did not conform to the order, the Company would have no authority under its right of eminent domain to obtain an easement based upon the improper line route.

---

7. Section 20 of Art. 78 enabled the Commission to delegate authority to its personnel who were authorized "to submit findings and recommendations to the Commission." There was the proviso: "No decision in any matter in which authority has been delegated under this section shall be effective until made or confirmed, and ordered filed, by the Commission in its principal office."

Section 20 was repealed and a new § 20 was enacted in lieu thereof effective 1 July 1976 by Acts 1976, ch. 756. It was amended by Acts 1977, chs. 54, 723. Code (1957, 1977 Cum. Supp.) Art. 78, § 20.

## III

A summary "judgment sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Maryland Rule 610 d 1. The trial court gave no reasons for granting summary judgment. It appears, however, from the conduct of the proceedings, that the court accepted the Company's argument that Bouton was attempting to attack the order which was issued in the administrative proceedings, and that he could not challenge it collaterally if he had not followed the administrative remedies to do so directly. On this basis, the only material fact to be considered was that Bouton had not followed the review procedures in the administrative proceedings. Accordingly, the court never came to grips with the question whether the modified line route conformed to the order and had no occasion to consider the facts placed before it by Bouton relating to that question.[8] *See Washington Homes, Inc. v. Interstate Land Development Company, Inc.,* 281 Md. 712, 382 A. 2d 555 (1978). We think the question must be determined for a proper resolution of the motion for summary judgment.

It appears to us that the substantial merits of this case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken. We believe that the purposes of justice will be advanced by permitting further proceedings in the action. We, therefore, invoke Maryland Rule 871 a, and, pursuant to its provisions, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, we order the case

---

8. In addition to the pleadings, facts were placed before the court on the motion through an affidavit of Mr. Bouton, the deposition of Harry E. Hutchinson, Jr., Supervisor of Engineering Services of the Company, with exhibits thereto consisting of various maps showing route lines, and attachments to Bouton's answer which included the Company's "Property Contacts Diary" concerning negotiations between the Company and the Boutons with respect to the easement, and correspondence, documents, various maps, and a memorandum of the Commission Engineering Division, all relating to the right of way for the route of the transmission line.

to be remanded to the lower court. Rule 871 a provides, *inter alia:*

> "Upon remand to the appropriate court, such further proceedings shall be had by amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered. . . ."

The trial court shall conduct such further proceedings as may be necessary for it to ascertain whether the modified line route conforms to condition (2) (g) of the Commission order of 13 November 1974. In determining the issue the court shall include in its considerations the facts relating thereto which were previously placed before it, and such material facts as the parties may bring forth on remand. The court shall reconsider its actions regarding the Company's motion to limit the scope of Bouton's examination of Harry E. Hutchinson, Jr. upon deposition whereby it sought to exclude all matters pertaining to the line route traversing the property of Daniel H. Mater and wife, and regarding Bouton's motion to compel discovery as to the questions objected to during the deposing of Hutchinson and duly certified. The location of the modified line route over Mater's land, which adjoins Bouton's land to the northeast, north, and northwest, and involves the Boy Scout pond referred to in condition (2) (g), is material to the question of conformance of the modified line with the order.

The conduct of further proceedings "as if no appeal had been taken and the judgment from which the appeal was taken had not been entered," as called for by Rule 871 a, is tantamount to vacating the judgment entered on the inquisition, leaving undisturbed the inquisition itself. Rule U21. Upon conducting the appropriate proceedings upon remand, the trial court shall take such action with respect to the entering of a new judgment as is required by its findings. *See Board v. John K. Ruff, Inc.,* 278 Md. 580, 596, 366 A. 2d

360 (1976). If it determines that the modified route is not in compliance with the Commission's order, the Company would not be empowered to obtain by condemnation the easement over Bouton's land which its petition seeks, and the court shall thereupon vacate the inquisition and enter a judgment in favor of Bouton for costs pursuant to Rule U21 b. If the court determines that the modified route is in compliance with the Commission's order, the Company would be authorized to obtain by condemnation the easement sought, and the court shall thereupon reenter final judgment on the inquisition pursuant to Rule U21 d.

## IV

### (1)

Bouton argues strenuously that the Company acted in bad faith in establishing the modified line route. "Bad faith" *vel non* is not involved here. In this State whether there is any necessity whatever to justify the taking of private land for a public purpose by the exercise of eminent domain is a judicial question. *Free State Realty v. City of Balto.,* 279 Md. 550, 558-560, 369 A. 2d 1030 (1977). "The cases recognize . . . that the choice as to the extent and type of taking must rest largely in the sound business judgment of the condemner, and that such choice will not be set aside by the court unless it is so oppressive, arbitrary or unreasonable as to suggest bad faith." *Ligon v. Potomac Elec. Pow. Co.,* 219 Md. 438, 439, 149 A. 2d 376 (1959) and cases therein cited. "The court in passing upon whether the condemnation sought is reasonably necessary is limited in its inquiry as to whether the discretion exercised by the party condemning is honestly exercised. . . . Unless the discretion of the condemning agency as to reasonable necessity is wrongfully, arbitrarily, or oppressively exercised, that discretion cannot be controlled or reviewed by the court." *Johnson v. Gas & Electric Co.,* 187 Md. 454, 463, 50 A. 2d 918 (1947). *See Boswell v. Prince George's Co.,* 273 Md. 522, 330 A. 2d 663 (1975); *Director v. Oliver Beach Imp. Ass'n,* 259 Md. 183, 269 A. 2d 615 (1970); *Wash. San. Comm. v. Santorios,* 234 Md. 342, 199 A. 2d 206

(1964); *Murphy v. State Roads Comm'n,* 159 Md. 7, 149 A. 566 (1930). Thus, "bad faith" goes to the discretion as to reasonable necessity for the taking. Here the Company had no discretion to exercise as to the reasonable necessity for the taking of land for the construction of the transmission line or as to the type or extent of the taking or as to the location of the line. Those matters had been determined by the Commission upon the grant of the certificate of convenience and necessity, and conclusively established them as the certificate stood valid. The Company had no choice. It was obligated to run the line where the Commission ordered it to go. If the Company complied with the order of the Commission, patently it did not act in bad faith. If it did not comply with the order, it had no right to take the land sought in any event.

(2)

Bouton is aggrieved because he was not notified of meetings involving the Company, Commission personnel and Mater during deliberations with respect to the route of the modified line. He claims that he had a constitutional and a statutory right to notice. We have no difficulty in deciding that he had neither. The cases and authorities make clear that he had no federal constitutional right of notice with respect to the location of the line. *See North Laramie Land Co. v. Hoffman,* 268 U. S. 276, 284, 45 S. Ct. 491 (1925); *Georgia v. Chattanooga,* 264 U. S. 472, 483, 44 S. Ct. 369 (1924); *Joslin Co. v. Providence,* 262 U. S. 668, 678, 43 S. Ct. 684 (1923); *Bragg v. Weaver,* 251 U. S. 57, 58, 40 S. Ct. 62 (1919); *Golden Gate Corporation v. Sullivan,* 112 R. I. 641, 644, 314 A. 2d 152 (1974); 1 Nichols on Eminent Domain § 4.103[1] (3d ed. 1976). The Constitution of Maryland merely prohibits the General Assembly from enacting a law authorizing private property to be taken for public use without just compensation. Md. Const. art. III, § 40. And it is manifest that any meetings had here to discuss the establishment of a line route to confrom with the Commission condition, no matter who was present or where they were held, did not constitute a "public hearing" within the contemplation of §§ 54A and 54B of the Law so

as to require the notices called for by those statutes. We note that Bouton admitted that he had received due notice of the hearing conducted by the Commission on the application by the Company for a certificate of public convenience and necessity.

## V

Paragraph SIXTH of the Company's petition for condemnation described the easements sought in metes and bounds, Rule U6 (2), and added:

> "TOGETHER with the right to clear and keep clear said easement or right of way at all times, to remove trees and under brush therefrom by any lawful method, and to cut and trim, and keep cut and trimmed, all trees outside the easement or right of way that might interfere with the safety, proper operation and/or maintenance of said line."

Bouton demurred, alleging that this claim of right was "inconsistent with the easement which the [Company] proposes to condemn, and inconsistent with the rights of [Bouton] in the remainder. Any entry on [Bouton's] property not lying within the metes and bounds of the easement as described ... must be by a Public Service Commission sanctioned condemnation proceeding with just compensation or with the consent of [Bouton] and on such conditions as [Bouton], the fee simple owners of the property, may impose." The claim constituted, the demurrer continued, an attempt to deprive Bouton of property without due process of law. The trial court overruled the demurrer. Under the teachings of *Webster v. Pole Line Co.,* 112 Md. 416, 76 A. 254 (1910) the Company had the right claimed. As for compensation, the inquisition included the right "to keep cut and trimmed, all 'danger' trees outside the easement or right of way" and defined "danger trees" as "trees of sufficient height that in falling, will come within ten feet of a conductor." The damages awarded included this taking. The court did not err in overruling the demurrer.

## VI

In the light of our opinion and remand for further proceedings, there is no need to determine, more than the opinion has in fact determined them, the other questions presented by Bouton, namely, did the trial court err to the prejudice of Bouton when it refused to rule on the Company's Motion to Limit Scope of Examination, when it denied Bouton's Motion to Dismiss and Motion to Compel Discovery, and when it refused Bouton's Request for Postponement.

We observe that our opinion is conclusive as to all points finally decided thereby. Rule 871 a.

> *Case remanded to the Circuit Court for Frederick County without affirmance or reversal pursuant to Maryland Rule 871 for further proceedings in accordance with this opinion, the costs below and in this Court to abide the result in the lower court.*