## DONALD M. BOUTON ET UX. *v.* THE POTOMAC EDISON COMPANY

[No. 100, September Term, 1979.]

*Decided August 27, 1980.*

*Motion for reconsideration filed September 26, 1980; denied October 10, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Robert L. Ferguson, Jr.,* with whom were *Allen, Thieblot & Alexander* on the brief, for appellants.

*Peyton Paul Phillips,* with whom was *Frederick J. Bower* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

This case represents chapter two in the dispute between the Potomac Edison Company and Donald M. Bouton and his wife over the Company's attempt to acquire by eminent domain an easement for the route of an overhead electric transmission line. We are asked to determine whether the Court of Special Appeals erred when it remanded the case, without affirmance or reversal, to the trial court for further proceedings on the grounds that the question of the Company's right to condemn should not have been submitted to the jury.

Chapter one began when the Potomac Edison Company (Company) applied for a certificate of public convenience and necessity from the Public Service Commission (PSC) for the

construction of a line to run from the Company's Carroll Station in Carroll County to its proposed Mt. Airy Station in Frederick County. Such a certificate is a prerequisite to the exercise of the Company's right of eminent domain. Maryland Code (1957, 1975 Repl. Vol., 1979 Cum. Supp.), Art. 78, § 54A.

As proposed to the PSC, the relevant portion of the line, which constitutes only a small portion of the total, would have passed through a heavily wooded area belonging to Daniel Mater along a path approximately parallel to the property line between the land of Mater and that of Izaak Walton League. Located on the League property, but immediately adjacent to the Mater property, was a Boy Scout pond. After passing through this area, the proposed line would have exited the wooded area at the property line between the lands of Mater and Bouton and passed through a relatively small corner of the Bouton property.

The PSC granted the certificate to construct the proposed line by its order No. 61016 dated November 13, 1974, but subjected the proposed route to certain modifications only one of which, paragraph 2 (g), is relevant here:

> That with respect to the area where the proposed transmission line passes in the vicinity of the Boy Scout Camp, the Company be required to make a modification of its proposed line routing so as to place approximately an additional 100 feet between the transmission line and the pond; the movement of the line, in order to effectuate this modification, should be confined to and remain within the wooded area southwest of the pond . . . .

In response to the PSC order, the Company planned a modified route and filed a petition for condemnation consistent with its modified plan in the Circuit Court for Frederick County. The trial court granted summary judgment in favor of the Company on the right to condemn and submitted the question of damages to a jury which awarded Bouton $24,200. Pending appeal by Bouton, the Company deposited the amount of the jury verdict with the court,

posted the required bond, and constructed the line. We remanded without affirmance or reversal because the trial court never passed upon the question of whether the modified line route conformed to the PSC order. We said

> We believe that the true issue in this case is whether the modified line route (the basis for the easement here sought) was in conformance with condition (2) (g) of the Commission order granting the certificate of public convenience and necessity (the prerequisite to the exercise of the Company's right of eminent domain). . . . if the modified line route did not conform to the order, the Company would have no authority under its right of eminent domain to obtain an easement based upon the improper line route. [*Bouton v. Potomac Edison Co.*, 282 Md. 142, 383 A.2d 669 (1978).]

On remand, in the trial court, both sides filed motions for summary judgment which were denied and the case was submitted to the jury. The jury found that the modified route did not comply with the PSC order and judgment was entered for Bouton. The Company appealed to the Court of Special Appeals which remanded without affirmance or reversal holding that the case should not have been submitted to the jury on the issue of whether the easement sought was in compliance with the PSC order because questions relating to the right to condemn are not for the jury, but for the court. *Potomac Edison Co. v. Bouton,* 43 Md. App. 371, 405 A.2d 755 (1979).

The appellant, Bouton, contends that it was not error to submit the case to the jury. In the alternative, he contends that even if such action constituted error, it was harmless because the trial court should have granted either his motion for summary judgment or his motion for directed verdict.

The appellee urges us to affirm the Court of Special Appeals' holding that whether the Company had the right to condemn the modified route was not a question for the jury.

We agree with the Court of Special Appeals that the question of whether the modified route complied with the PSC order should not have been submitted to the jury.

At common law there was no right to an ordinary jury trial in condemnation cases, even on the issue of damages. 1 *Nichols' The Law of Eminent Domain* § 4.105 [1] (rev. 3d ed. 1973). Condemnation proceedings were not ordinary suits at law. Rather, they were special proceedings, lacking the characteristics of ordinary trials, brought pursuant to the power of eminent domain, a power derived from the sovereignty of the state. *See Lore v. Board of Public Works,* 277 Md. 356, 354 A.2d 812 (1976); *Ridings v. State Roads Commission,* 249 Md. 395, 399, 240 A.2d 236 (1968); 1 *Nichols', supra* at §§ 1.1-1.3; *See generally* J. Ghingher, Jr. and J. Ghingher, III, *A Contemporary Appraisal of Condemnation in Maryland,* 30 Md. L. Rev. 301, 322 (1970). It was often the practice to refer questions of damages to a commission of viewers or appraisers, usually three or five in number. Even where it was the customary practice to submit the issue to the jury, that jury was not the common law jury of twelve presided over by a judge, but was a jury of varying number depending on the jurisdiction, and was presided over by the sheriff. 1 *Nichols', supra* at § 4.105. Maryland apparently was among those states which, early in its history, provided for a sheriff's jury to fix damages for the taking of land for certain purposes. *Baltimore Belt. R.R. Co. v. Baltzell,* 75 Md. 94, 23 A. 74 (1891); *Barnett v. Charles County,* 206 Md. 478, 112 A.2d 492 (1954); L. Macht, *Condemnation in Maryland* 18, Research Report No. 31, Submitted August, 1958 (Legislative Council of Maryland). For these reasons Article 23 of the Maryland Declaration of Rights which preserves the common law right to a jury trial in civil proceedings does not include condemnation cases which are special proceedings. Thus, absent specific constitutional or statutory provisions mandating a jury trial, the issues in a condemnation case should be tried by the Court. 1 *Nichols, supra* § 4.105[5] at p. 4-119.

In Maryland, Article III § 40 of the Constitution

mandates the issue of *damages* be tried by a jury,[1] and consistent with our previous discussion, the issue of the right to condemn has been for the court's determination. This rule has received broad application. It has been held applicable to questions relating to whether the plaintiff possessed the general legal authority to condemn any property, *Potomac Power Co. v. Birkett,* 217 Md. 476, 143 A.2d 485 (1958); to whether that authority was being exercised in an arbitrary, capricious, or unreasonable manner, *Lustine v. State Roads Comm.,* 217 Md. 274, 142 A.2d 566 (1958), *Johnson v. Gas & Electric Co.,* 187 Md. 454, 50 A.2d 918 (1947); and to whether the contemplated taking was for a public use, *Riden v. Phila., B. & W. R.R. Co.,* 182 Md. 336, 35 A.2d 99 (1933). *Accord, Ligon v. Potomac Elec. Pow. Co.,* 219 Md. 438, 149 A.2d 376 (1959); *Hyattsville v. W., W. & G. R.R. Co.,* 122 Md. 660, 90 A. 515 (1914). The common thread running through these cases was the issue of whether the plaintiff had met certain conditions precedent, absent which there was no right to condemn.

It is also clear that Md. Rule U15 was not meant to change the settled law, even assuming that it could. This rule provides that, "[a] proceeding for condemnation shall be tried by a jury unless all parties elect a trial by the court without a jury as hereinafter provided." Nevertheless, the Committee Note to the Rule states "[n]o change is intended in the present law as to whether the question of the right to condemn is for the court or for the jury." In other words, the Rule is intended to implement Art. III, § 40, which provides for a jury on the issue of the quantum of compensation due.

The present case involves the question of whether the Company complied with the PSC order authorizing it to condemn certain land. This was a matter for the court to decide. Therefore, it was error for the judge to submit the question to the jury. Such error would ordinarily require

---

1. Art. III, § 40 of the Maryland Constitution provides:

The General Assembly shall enact no law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation.

remand for determination of the issue by the court; however, for the reasons stated *infra* we find it unnecessary to remand this case to the trial court for determination of this issue.

As noted above, Bouton maintains that if the trial judge's action was erroneous, it was harmless because in any event Bouton was entitled to summary judgment or directed verdict in his favor. In the recent case of *Metropolitan Mtg. Fd. v. Basiliko,* 288 Md. 25, 415 A.2d 582 (1980). We held that, on appeal from a final judgment entered following a full trial of the general issue, we would not review a pretrial *denial* of a motion for summary judgment, other than for an abuse of discretion. We held that, even where the technical requirements for a summary judgment were met, if for any reason the trial judge believed that the interests of justice might be better served by a full presentation of the evidence, he might exercise his discretion and deny the motion. Accordingly, in this case, assuming *arguendo* that the pleadings, affidavits and other papers on file would have permitted a summary judgment in Bouton's favor, we will not review the trial court's denial of that motion, absent a showing of an abuse of discretion. There has been no such showing.

Bouton next postulates that the trial court should have granted his motion for a directed verdict. We agree. The trial court had denied Bouton's motion for summary judgment and erroneously granted a jury trial. With the case in this posture, the only procedural device left open to Bouton to challenge the right of the jury to decide the issue was a motion for a directed verdict.

It is obvious to us that the trial court misunderstood our mandate in *Bouton I* which directed that a determination be made as to "whether the modified line route ... was in conformance with condition (2) (g) of the Commission order." This issue was one of law to be determined by the court alone, i.e., whether the authority to condemn had been validly exercised. We said in *Bouton I* that the conduct of further proceeding under Rule 871 a would be "tantamount to vacating the judgment entered on the inquisition, leaving undisturbed the inquisition itself." If the modified route did

not conform to the Commission's order, the court would vacate the inquisition and enter judgment for costs for Bouton pursuant to Rule U21 b. If the modified route complied with the order, the Court would reenter final judgment on the inquisition. Thus, in *Bouton I* upon remand, the function of the jury, the assessment of damages for the property condemned, had been carried out; it remained for the trial court to determine, upon a consideration of all the facts, whether the Company had complied with the PSC order.

Had the trial court conducted the proceedings as we indicated it should have rather than having submitted the matter to a jury, appellate review would have been facilitated because the issue would have been drawn, i.e., did the trial court correctly decide the issue based on the evidence presented. While we agree with the intermediate court that under ordinary circumstances this matter should be remanded for compliance with our mandate, we have reviewed the record and determined that our resolution of the issue is in the best interest of the parties and the administration of justice.

Our review of the testimony and exhibits in this case leads us to conclude that the Company did not comply with the PSC order. The witnesses for the Company included a supervisor of engineering services for the Company a public service engineer as well as the chief engineer for the PSC. All three witnesses expressed the opinion that the modified route complied with the PSC order.[2] But these conclusory statements are supported by no facts supportive of any inference which could permit an interpretation of the PSC order in such manner that the location of the modified route as described by these same witnesses could be said to be consistent with the order.

---

2. The conclusions expressed by the PSC engineers represent only their opinions and do not constitute a determination by the Commission itself. As we noted in *Bouton I* "[t]he Commission order of 13 November 1974 may not be considered as approving whatever modification of the original route the Company believed to be in compliance with the condition, . . . ." Bouton v. Potomac Edison Co., 282 Md. 142, 383 A.2d 669 (1978). As we implied therein the proper procedure would have been for the Company to submit their modified route for approval by final order or decision of the Commission itself prior to construction of the line.

For clarity we here repeat paragraph 2 (g) of the order:

That with respect to the area where the proposed transmission line passes in the vicinity of the Boy Scout Camp, the Company be required to make a modification of its proposed line routing so as to place approximately an additional 100 feet between the transmission line and the pond; the movement of the line, in order to effectuate this modification, should be confined to and remain within the wooded area southwest of the pond . . . .

There is no question that the line was indeed moved an additional 100 feet from the pond, but the only wooded area in the vicinity of the pond is that wooded area on the property of Daniel Mater and the adjoining land of the Izaak Walton League. The wooded area to the south and west of the pond is entirely on the land of Daniel Mater. The modified route exited the wooded area at the Mater-Bouton property line at a different point than it would have exited according to the original route. The modified route then crossed through a large open field on the Bouton property instead of passing over the corner of the Bouton property. As a result it traversed a much larger portion of the Bouton property than the original route. Clearly then the modification of the line was not restricted to the wooded area southwest of the pond. There is no wooded area southwest of the pond on the Bouton property and as the modified route crossed the Bouton property according to a different path than the original, there was a modification of the route outside the wooded area. On its face, the order appears to require the route to return to the original route within the wooded area with what might be described as a ziz-zag or V shaped movement (presumably through the use of a tower). We find no *facts* which permit a different interpretation. Instead of immediately returning the line to its original route, the Company simply angled the line away from the pond and continued in a straight line thus accounting for the different exit point from the woods. The line should have exited the woods at the same point shown on the original route.

Accordingly, notwithstanding the unsupported conclusory

statements of the Company's witnesses, the record is barren of evidence which would permit a judgment for the Company on the right to condemn. Therefore the only proper action for the trial court would have been to conclude that the modified route did not conform. Thus even though it was clear error for the trial court to submit the issue to the jury, because the result of the trial was consistent with the only result which would have been acceptable in a court trial of an issue of law, further proceedings on this issue are unnecessary. The judgment entered for defendants in the circuit court should be affirmed.

We want to make it abundantly clear that we do not approve of the court's action in submitting the case to the jury. This case does not represent a mere improper exercise of discretion which was rendered harmless by the jury's verdict. A trial court judge has no discretion to submit a question involving the right to condemn to the jury. It is only the peculiar posture of this case upon appellate review which precludes the necessity for a remand for the trial court's resolution of the issue.

Finally, Bouton contends that he is entitled to possession and to various expenses including counsel fees and other costs in accordance with Maryland Code (1974 and 1979 Cum. Supp.), §§ 12-106 and 12-107 of the Real Property Article and Md. Rules U21 b and U25 b. These questions were not decided by the trial court and are not properly before us. Md. Rule 885. We expect these issues to be resolved by the trial court on remand.

> *Judgment of the Court of Special Appeals vacated and case remanded to that court with instructions to affirm the judgment for the defendant entered in the Circuit Court for Frederick County and to remand to that court for further proceedings consistent with the views expressed in this opinion.*
>
> *The Potomac Edison Company to pay the costs.*