694 A.2d 522

Wesley A. BRYAN et al.

v.

STATE ROADS COMMISSION OF the STATE HIGHWAY ADMINISTRATION.

No. 1511, Sept. Term, 1996.

Court of Special Appeals of Maryland.

June 2, 1997.

708

R. Edwin Brown (Laurie R. Hanig and Brown & Sturm, on the brief), Rockville, for Appellants.

Janet Bush Handy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Omar V. Melehy, Assistant Attorney General, on the brief), Baltimore, for Appellee.

Argued before DAVIS and SALMON, JJ., and JAMES S. GETTY, J. (Retired, Specially Assigned).

SALMON, Judge.

The two arguments presented by appellants present issues that have not previously been addressed by any reported Maryland decision. The arguments are: 1) that under Article III, section 40 of the Maryland Constitution, a property owner has a constitutional right to a twelve-person jury in a condemnation proceeding; and 2) if we assume, *arguendo*, that it would be constitutionally permissible for the General

Assembly to pass a statute allowing a jury of less than twelve to decide condemnation cases, section 8–306 of the Courts and Judicial Proceedings Article of the Maryland Code Annotated (1995 Repl.Vol.), which allows a six-person jury in civil actions, does not apply to a condemnation proceeding because a condemnation proceeding is not a "civil action." We hold that Article III, section 40, of the Maryland Constitution does not require a twelve-person jury in an eminent domain case. We also hold that a condemnation proceeding is a "civil action" within the meaning of section 8–306.

## FACTS

On July 1, 1994, the State Roads Commission of the State Highway Commission, appellee, filed a quick-take petition [1] in the Circuit Court for Montgomery County to take possession of property owned by Wesley and Wona Bryan, appellants. The land was needed for the widening of New Hampshire Avenue. A formal Condemnation Petition was filed by the State on February 23, 1995, in which the State sought to take a 1,866 square foot strip of appellants' land in fee simple, together with another 653 square feet for a revertible easement during the construction period.

Trial commenced on July 15, 1996. Counsel for the appellants, during *voir dire*, notified the trial judge (Chapin, J.) that appellants took the position that they were entitled to a

---

1.  Quick-take condemnation proceedings are authorized by sections 40A to 40C of Article III of the Maryland Constitution. *King v. State Roads Comm'n of State Highway Admin.,* 298 Md. 80, 86, 467 A.2d 1032 (1983). Section 40B

> authorizes the General Assembly to provide by law for the State Roads Commission to take immediate possession of property needed for state highway purposes

> > "upon payment therefor to the owner or owners thereof . . ., or into Court, [of] such amount as said State Roads Commission shall estimate to be of the fair value of said property, provided such legislation also requires the payment of further sum that may subsequently be awarded by a jury."

> *Id.* at 86–87, 467 A.2d 1032 (quoting Md. Const. art. III, § 40B). Statutory provisions in Title 8 of the Transportation Article have implemented section 40B. *Id.* at 87, 467 A.2d 1032.

twelve-person jury. The trial judge disagreed, citing section 8–306 of the Courts and Judicial Proceedings Article, which states: "In a civil action in which a jury trial is permitted, the jury shall consist of 6 jurors." Prior to the jury being sworn, the trial judge asked the parties if they were satisfied with the jury. Appellants' counsel advised the trial judge that he was dissatisfied due to the fact that the court had rejected his contention that his clients were entitled to a twelve-person jury. A six-person jury awarded appellants $12,800 in damages due to the taking of their land. Disappointed with the amount of the award, appellants noted this timely appeal.

## DISCUSSION

### A. Article III, Section 40 of the Maryland Constitution

Article III, section 40, of the Maryland Constitution provides:

> The General Assembly shall enact no Law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation.[2]

Appellants contend that section 40 requires a jury of twelve persons in all eminent domain proceedings.

The only support offered by appellants for this contention is language contained in the case of *Baltimore Belt Railroad Co. v. Baltzell*, 75 Md. 94, 108, 23 A. 74 (1891). When *Baltzell* was

---

**2.** Article III, section 40, of the Maryland Constitution appeared for the first time in the Constitution of 1851 as Article III, section 46. It was thereafter inserted in the Constitution of 1864 as Article III, section 39. By virtue of the Constitution of 1867, it became Article III, section 40. *See Patterson v. Mayor and City Council of Baltimore*, 127 Md. 233, 239, 96 A. 458 (1915).

Prior to 1851, Maryland citizens were protected from taking of land without just compensation by the 21st section of the Bill of Rights, which provided that "no man ought to be ... disseized of his freehold ... or deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land." *See Wright v. Wright*, 2 Md. 429, 452 (1852). Former section 21 is now found, without substantive change, in Article 24 of the Maryland Declaration of Rights.

decided, common law juries in most counties sat for only two jury terms per year, each about six months apart. *Id.* at 107, 23 A. 74. These juries sat for only one term of court and thereafter persons who wanted jury trials had to wait until the next court term. *Id.* In an apparent attempt to avoid such delays, the Maryland Legislature enacted a statute (Article 23, section 167) that, in certain circumstances, provided for sheriff's juries in condemnation cases. The statute allowed the owner of property to apply to a justice of the peace to issue a warrant to the sheriff, requiring him to summons a jury

> of twenty qualified to act as jurors under the laws of the State, to meet on the premises on a day named in the warrant, and from the panel thus selected, the [condemnor] and the owner, may each strike off four persons and the remaining twelve shall act as "the jury of the inquest of damages."

*Id.* at 98, 23 A. 74. Under the statute then in effect, the sheriff's jury was required to "reduce their inquisition to writing"; the inquisition was then returned by the sheriff to "be confirmed by the court at its next session, unless cause to the contrary be shown." [3] *Id.*

In *Baltzell,* the Court was asked to determine whether the Legislature had the power to mandate that compensation was to be determined in a condemnation case by a special jury summoned upon a sheriff's warrant and not by a common law

---

**3.** In 1A *Nichols' The Law of Eminent Domain* § 4.105[1], at 4-137 (3d rev. ed.1989), the origin of a sheriff's jury was explained:

> The jury which was required in the ancient proceeding of inquest of office, by which highways were laid out in England, at the time of the settlement of the American colonies, and which determined what damages would be suffered by the king or any other person, was not the common law jury of twelve presided over by a judge. It was a jury of indeterminate number, twelve, or less, or more, and was presided over by a sheriff or a coroner.
>
> In accord with this practice, it was the custom in most of the colonies in which the writ of *ad quod damnum* was adopted for the purpose of assessing damages in eminent domain cases, to have the tribunal which assessed the damages composed of less than twelve, and in other respects to lack the characteristics of a common law jury.

jury. *Id.* at 106, 23 A. 74. The court held that the Constitution left to the Legislature to "provide whether such assessment shall be made by a common law jury or by a jury summoned by warrant. . . ." In reaching this conclusion, the Court stated:

[W]e can hardly suppose framers of the Constitution meant to delay and embarrass the construction of railroads and other public improvements, by requiring compensation to be awarded in court by a common law jury. At least, if such had been the intention . . . it is but fair to presume this intention would have been declared in plain and explicit terms. *What they did mean, was to provide in the first place that the owner should have the right or privilege of a jury of twelve men in determining what compensation was to be paid, and in the next, that he should not be deprived of his property till such compensation has been paid. And such has been the uniform construction of this clause of the Constitution from the time of its adoption till the present.*

*Id.* at 107–08, 23 A. 74 (emphasis added).

Appellants, relying solely on the emphasized portion of the above quote, contend that Article III, section 40, was "long ago construed to require a jury of twelve persons." Appellants ignore the fact that the Court of Appeals was not asked in *Baltzell* to determine the proper number of jurors in a condemnation case. Thus, the *Baltzell* Court's statement that a property owner is entitled to a jury of "twelve men" was clearly dictum.

■ Unlike holdings, statements of dicta are remarks "by the way" including any statement of the law enunciated by the court merely by way of "illustration, argument, analogy or suggestion." Black's Law Dictionary 541 (4th ed.1968). As explained by Judge Moylan, writing for this Court in *State v. Wilson,* 106 Md.App. 24, 36–39, 664 A.2d 1 (1995), *cert. denied,* 340 Md. 502, 667 A.2d 342, *rev'd on other grounds,* U.S. , — U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997):

The precedential weight of a holding is predicated in large measure on its status as the *deliberate and considered*

*judgment* of an entire collegiate court, including the opinion writer, on the issue before it that must be decided. . . . A holding, therefore, has earned the authoritative weight we give it.

. . . .

Well considered *dicta*, of course, is sometimes very good and, therefore, of significant persuasive weight. That is a far cry, however, from giving persuasive weight to every hurried word that may appear in the course of an opinion.

. . . .

*[S]tare decisis* is ill served if readers hang slavishly on every casual or hurried word. . . .

The statement in *Baltzell* relied upon by appellants is manifestly of the "hurried word" variety.[4]

The Court of Appeals has directed inferior courts to "turn to the federal case law for guidance in defining the scope of the right to jury trial in Maryland." *Higgins v. Barnes,* 310 Md. 532, 543, 530 A.2d 724 (1987); *Mattingly v. Mattingly,* 92 Md.App. 248, 607 A.2d 575 (1992). In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) and *Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), the Supreme Court tackled issues similar to the one at hand: Whether a twelve-person jury is required, respectively, under the Sixth and Seventh Amendments. Like Article III, section 40 of the Maryland Constitution, neither the Sixth nor the Seventh Amendments to the United States Constitution, which respectively guarantee the right to a jury trial in criminal cases and most common law civil suits, specify the number of jurors required.[5] In *Williams,* 399 U.S. at 102, 90 S.Ct. at

---

**4.** Interestingly, the *Baltzell* Court ignored *dicta* in the case of *Western Maryland Railroad Co. v. Patterson,* 37 Md. 125 (1872), in reaching its conclusion. It characterized the *dicta* as merely non-binding "side remarks." 75 Md. at 102, 23 A. 74.

**5.** The Sixth Amendment states in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and District wherein the crime shall have been committed. . . .

1907, the Court held that the Sixth Amendment does not require a jury of twelve for a criminal defendant even though at common law a jury consisted of twelve jurors. The Court concluded that

> the fact that a common law jury was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance "except to mystics." [citation omitted]. To read the Sixth Amendment as forever codifying a feature so incidental to the real purpose of the Amendment is to ascribe a blind formalism to the Framers which would require considerably more evidence than we have been able to discover in the history and language of the Constitution. . . .

In *Colgrove*, 413 U.S. at 157, 93 S.Ct. at 2453, the Court held that the presence of twelve members on a jury is not a "substantive aspect" of the right to trial by jury under the Seventh Amendment. The Court acknowledged that earlier decisions of the Court, such as *Capital Traction Co. v. Hof,* 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899), made the statement that " 'trial by jury' means 'a trial by a jury of 12,' " but explained that those statements were "clearly dictum and not a decision upon a question presented or litigated." *Colgrove*, 413 U.S. at 157, 93 S.Ct. at 2453. In *Colgrove*, the Court also pointed out that "juries of less than 12 were common in this country throughout colonial times." *Id.* at n. 12.

Article III, section 40, does not contain language incorporating any of the historical features of juries in condemnation proceedings or indicating that a specific number of jurors is required. Likewise, the Debates and Proceedings of the 1851 Maryland Reform Convention to Revise the State Constitution, at which the current form of Article III, section 40, was first adopted, also provide no evidence of any intent by the

U.S. Const. amend. VI. The Seventh Amendment states in pertinent part:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.

U.S. Const. amend VII.

Convention to dictate the number of jurors required in a condemnation proceeding. 2 *Debates and Proceedings of the Maryland Reform Convention* 766, 784 (1851).

We, therefore, conclude that Article III, section 40 of the Maryland Constitution does not require a twelve-person jury in condemnation cases.

### B. Section 8–306 of the Courts and Judicial Proceedings Article

While appellants acknowledge that section 8–306 of the Courts and Judicial Proceedings Article (hereinafter section 8–306) mandates a jury of only six persons "[i]n a civil action in which a jury trial is permitted," they contend that this section does not apply to eminent domain proceedings because (allegedly) a condemnation proceeding is not a "civil action." [6]

---

6. At oral argument, as well as in a document submitted to this Court subsequent to oral argument titled "Appellants' Supplemental Points and Authorities," appellants' counsel presented the argument that, in order for section 8–306 to apply to condemnation proceedings, the Legislature was required to pass an amendment to Article III, section 40, of the Maryland Constitution and obtain ratification of that amendment by voter referendum. Appellants' counsel argues that amendment of Article III, section 40, could not "aris[e] by implication from the amendment of Article 5 of the Declaration of Rights," which was approved in 1992 by voter referendum. Because no such amendment to Article III, section 40, was passed, appellants argue that "Article III, [s]ection 40 remains unamended, and continues to contemplate and require a twelve[-]person jury in eminent domain proceedings." We need not address this argument because, by failing to present it in their initial brief, appellants' have waived the argument on appeal. Md. Rule 8–504(a)(5); *Kimbrough v. Giant Food, Inc.*, 26 Md.App. 640, 654, 339 A.2d 688 (1975); *see* also *Beck v. Mangels*, 100 Md.App. 144, 149, 640 A.2d 236 (1994).

If this argument were properly before us, we would hold that it has no merit. Article III, section 40, was not amended by implication. Article 5 of the Declaration of Rights, before it was amended in 1992, provided, in pertinent part:

That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity. . . .

In *Unnamed Physician v. Commission on Medical Discipline of Maryland,* 285 Md. 1, 7, 400 A.2d 396, *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979), the Court of Appeals, in a case of first impression, interpreted the meaning of the term "civil action." The issue before the Court was whether a proceeding before the Commission on Medical Discipline of Maryland is a civil action within the meaning of Article 43, section 134A (d) of the Maryland Code (1957, 1978 Cum. Supp.).[7] *Id.* Section 134A (d) provided that the proceedings and files of a medical review committee are "neither discoverable nor admissible into evidence in any civil action arising out of matters" under review by the medical review committee.[8] *Unnamed Physician,* 285 Md. at 4, 400 A.2d 396. In resolving this issue, the Court employed the definition of

---

In 1992, Article 5 of the Declaration of Rights was amended by adding subsections (b) and (c) which read:

(b) The parties to any civil proceeding in which the right to a jury trial is preserved are entitled to a trial by jury of at least 6 jurors.

(c) That notwithstanding the Common Law of England, nothing in this Constitution prohibits trial by jury of less than 12 jurors in any civil proceeding in which the right to a jury trial is preserved.

Article 5 of the Declaration of Rights is inapplicable to condemnation proceedings because, as demonstrated in Part A of this opinion, at common law there was no right to a common law jury in condemnation proceedings. There was no need to amend Article III, section 40, because, as discussed, *supra,* Article III, section 40, neither specifies the number of jurors required nor contains any language incorporating any of the historical features of juries in condemnation proceedings.

7. The Commission on Medical Discipline of Maryland was the agency of the Department of Health and Mental Hygiene charged with supervision and control of physicians. *Unnamed Physician,* 285 Md. at 3, 400 A.2d 396. Today, there is a State Board of Physician Quality Assurance in the Department of Health and Mental Hygiene. Md.Code Ann., Health Occ. § 14–201 (1994 Repl.Vol.).

8. Substantial portions of Article 43 of the Maryland Annotated Code were repealed by Acts 1981, ch. 8, and Acts 1982, ch. 240. Acts 1992, ch. 770, repealed or transferred the remaining sections of Article 43. Md. Ann.Code, art. 43 (1957, 1994 Repl. Vol.) (editor's note on Article 43). Today, Health Occupations section 14–413 prohibits the subpoena or discovery of mandatory reports filed with the Board by hospitals and related institutions in "any civil action other than a proceeding arising out of a hearing and decision of the Board. . . ." Md.Code Ann., Health Occ. § 14–413 (1994 Repl.Vol.).

"civil action" set forth by *Poe's Pleading and Practice* § 46 (H. Sachs ed., 6th ed.1970) as follows:

[a] civil action may be defined to be a proceeding instituted in a court of law for the purpose of obtaining redress for a grievance in the shape of a judgment by the court. "Action" includes all the steps by which a party seeks to enforce any right in a court of law or equity and includes *an appeal taken to a court* of record from the final decision of an inferior court *or administrative body where such appeal is authorized by statute.* "Action" does not include a criminal proceeding.... Until defined by the Maryland Rules, the word "action" was inapplicable to suits pending in equity, the definition of the word being limited to those matters pending only before the law courts. [emphasis supplied].

*Unnamed Physician,* 285 Md. at 8, 400 A.2d 396. The Court, after acknowledging that "there are many sources which have attempted to explain the meaning of the term," quoted Black's Law Dictionary 311–12 (4th rev. ed.1968), which defines a civil action as:

[a]n action wherein an issue is presented for trial formed by averments of complaint and denials of answer or replication to new matter ..., an adversary proceeding for declaration enforcement or protection of a right, or redress, or prevention of a wrong.... Every action other than a criminal action. [citations omitted].[9]

*Id.* at 7, 400 A.2d 396.

Using those definitions, the Court in *Unnamed Physician* held that "as a fundamental principle a civil action is an

---

**9.** The fourth revised edition of Black's Law Dictionary, used by the *Unnamed Physician* Court, has since been updated. The sixth edition concisely defines a "civil action" as an action "brought to enforce, redress, or protect private rights. In general, all types of actions other than criminal proceedings." Black's Law Dictionary 245 (6th ed.1990). The sixth edition further states that a civil action includes all actions, "both those formerly known as ... suits in equity and actions at law." *Id.* In this regard, it is noteworthy that in Maryland, a condemnation proceeding has "always been held to be a proceeding at law...."

adversary proceeding before a court of law; judicial review of the decision of an administrative agency is a civil action; a proceeding before the Commission [on Medical Discipline of Maryland] is not a civil action unless the Legislature has clearly manifested an intention that it should be." *Unnamed Physician*, 285 Md. at 9–10, 400 A.2d 396.

■ Applying the definitions used in the *Unnamed Physician* case to the issue before us, it is clear that a "condemnation proceeding" falls within the ambit of the term "civil action." It is a non-criminal adversary proceeding in a court of law that protects a landowner's private property right by providing redress, in the form of compensation, when the state exercises its power of eminent domain.

■ Appellants, citing *Bouton v. Potomac Edison Co.*, 288 Md. 305, 309, 418 A.2d 1168 (1980), argue that condemnation proceedings have never been considered "ordinary suits at law, but have always been special proceedings brought pursuant to the power of eminent domain." "[A] proceeding is special where the law confers a right and authorizes a special application to the court to enforce it." 1A C.J.S. *Actions* § 67, at 458 (1985). In *Bouton*, 288 Md. at 306, 418 A.2d 1168, the Court of Appeals addressed the issue of whether a question of law was improperly submitted to the jury in a condemnation case. In its opinion, the Court explained the origins of condemnation proceedings as follows:

> At common law there was no right to an ordinary jury trial in condemnation cases, even on the issue of damages. 1 *Nichols' The Law of Eminent Domain* § 4.105[1] (rev.3d ed.1973). Condemnation proceedings were not ordinary suits at law. Rather, they were special proceedings, lacking the characteristics of ordinary trials, brought pursuant to the power of eminent domain, a power derived from the sovereignty of the state. [Citations omitted.]

*Ridgely v. Mayor and City Council of Baltimore*, 119 Md. 567, 577, 87 A. 909 (1913).

*Id.* at 309, 418 A.2d 1168. Although *Bouton* states that condemnation proceedings were "special," neither *Bouton* nor any other Maryland case stands for the proposition that condemnation proceedings are not "civil actions." [10]

■ Applying the definition of "civil action" used in the *Unnamed Physician* case, we conclude that the mere fact that a condemnation proceeding is "special" does not mean that the proceeding cannot be a "civil action" as well.[11] *See also* 1A C.J.S. *Actions* § 67, at 457 (the term "action" generally includes a "special proceeding").

Our conclusion is supported by the legislative history of section 8–306. That section was originally introduced at the 1992 legislative session of the General Assembly as Senate Bill 263 and House Bill 319. The Senate bill was signed by the Governor and became effective October 1, 1992, as chapter 85 of the Acts of 1992.

The floor report for Senate Bill 263 indicates that the Legislature, in specifying that six-person juries should serve in all "civil actions," intended to promote "judicial economy and efficiency" by saving local governments between "twenty and thirty percent" in jury costs. S.B. 263, Floor Rep., 1992 General Assembly of Maryland (1992) [hereinafter Floor Report]. In the floor report, it is said, "Testimony indicated that the vast majority of states now allow 6–person juries in civil proceedings and misdemeanor trials." This at least suggests

---

**10.** The Maryland Rules of Procedure at the time of the trial of this case referred to condemnation cases as "special proceedings." *See* Chapter 1100, Rules of Procedure (1996), listing 47 types of special proceedings.

**11.** As appellant points out, the case of *In re New Haven Water Co.*, 86 Conn. 361, 85 A. 636, 638 (1912), stands for the principle that because condemnation cases are special proceedings they are not civil actions. Although not cited by appellants, a number of cases in sister states have reached a similar conclusion. *See* cases catalogued in 7 *Words & Phrases* 345–46 (1952) and 7 *Words & Phrases* 85–96 (Supp.1996). Approximately an equal number of cases in other jurisdictions, however, have reached an opposite result. *See id.* It is nevertheless worth noting that in a broader context, a large majority of courts dealing with non-condemnation cases have interpreted the term "civil action" as referring to all non-criminal proceedings. *See id.*

that the Legislature intended to restrict the number of jurors to six in all non-criminal proceedings when the parties have a right to a jury.

Any interpretation of the statute allowing for twelve-person juries in condemnation cases and six-member juries in all other non-criminal cases when jury trials are permitted would lead to results that we believe to be both illogical and inconsistent with the legislative purpose of curbing costs and promoting judicial efficiency. *Cf. Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 517, 525 A.2d 628 (1987) (considering statute in light of purpose and objective, Court of Appeals adopted construction "comport[ing] with common sense and avoid[ing] illogical or absurd results"). If we were to apply appellants' reasoning, the jury in highly complex mass tort actions, such as the recent Baltimore City asbestos case considered in *ACandS, Inc. v. Godwin,* 340 Md. 334, 667 A.2d 116 (1995), which involved over eight thousand plaintiffs, would be limited to six persons while a landowner in a simple condemnation proceeding, such as the one *sub judice,* would be entitled to a jury of twelve. Appellants fail to provide any explanation, and we can think of none, as to why the General Assembly could possibly have intended to make such a distinction when its professed goal was to curb costs and promote judicial efficiency.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.