736 A.2d 1057

**Wesley A. BRYAN et al.**

v.

**STATE ROADS COMMISSION OF the STATE HIGHWAY ADMINISTRATION.**

**No. 71, Sept. Term, 1997.**

Court of Appeals of Maryland.

Sept. 10, 1999.

R. Edwin Brown (Laurie R. Hanig, Brown & Sturm, on brief), Rockville, for petitioners.

Janet Bush Handy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW,* RAKER, WILNER, MARVIN H. SMITH, (Retired, specially assigned) and DALE R. CATHELL, (Specially assigned), JJ.

ELDRIDGE, Judge.

We granted a petition for a writ of certiorari in this case to decide whether landowners are constitutionally entitled to twelve person juries in Maryland condemnation proceedings. We shall hold that a landowner is entitled to a six person jury and not a twelve person jury in a condemnation proceeding, based on the 1992 amendment to Article 5 of the Maryland Declaration of Rights, which entitles a party in a civil proceeding to a jury of at least six persons, and based on the statutory provision implementing the 1992 constitutional amendment, Ch. 85 of the Acts of 1992, codified as Maryland Code (1974, 1998 Repl.Vol.), § 8–306 of the Courts and Judicial Proceedings Article, which specifies that a jury in a civil action shall consist of six persons.

I.

The State Roads Commission of the State Highway Administration, which is part of the Maryland Department of Transportation, filed in the Circuit Court for Montgomery County a "quick take" petition, and later a formal condemnation petition, to condemn part of the property of Wesley A. Bryan and

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

Wona C. Bryan. The Bryans' property was needed in order to widen New Hampshire Avenue in Montgomery County.

The trial began on July 15, 1996. The Bryans requested that a twelve person jury be impaneled, arguing that they were entitled to a twelve person jury under Article III, § 40, of the Maryland Constitution. The circuit court disagreed, holding that in a condemnation case a six member jury was appropriate under Code (1974, 1998 Repl.Vol.), § 8–306 of the Courts and Judicial Proceedings Article. A trial before a six person jury was held, and an inquisition awarding $12,800 to the Bryans was issued.[1]

Unhappy with the amount of damages contained in the inquisition, the Bryans appealed to the Court of Special Appeals. They raised a single issue, arguing that landowners have a constitutional right, under Article III, § 40, of the Maryland Constitution to a twelve person jury in a condemnation case. The Court of Special Appeals rejected this argument and affirmed. *Bryan v. State Roads Commission,* 115 Md.App. 707, 694 A.2d 522 (1997).

The Bryans then filed in this Court a petition for a writ of certiorari, again raising the single issue of whether, under Article III, § 40, of the Constitution, landowners are entitled to a twelve person jury in a condemnation proceeding. We granted the petition and issued a writ of certiorari. *Bryan v. State Roads Commission,* 347 Md. 155, 699 A.2d 1169 (1997).[2]

---

1. An inquisition is a "special verdict" rendered by the trier of fact in a condemnation action that "shall set forth the amount of any damages to which each defendant or class of defendants is entitled or, if the court so orders, the total amount of damages awarded or both." Maryland Rule 12–208(d).

2. The certiorari petition was filed on behalf of the Bryans and also on behalf of other landowners whose cases were pending in, but not yet decided by, the Court of Special Appeals. Our order granting the petition, and the writ of certiorari issued to the Court of Special Appeals, however, were limited to the case involving the Bryans. The other cases are presumably still pending in the Court of Special Appeals, awaiting the outcome of the Bryans' case.

## II.

The general jury trial guarantees in the Maryland Constitution are contained in Articles 5, 21, and 23 of the Maryland Declaration of Rights. Article 5 of the Declaration of Rights, prior to the 1992 constitutional amendment, simply provided, in pertinent part, as follows:

> "That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law...."

By the constitutional amendment ratified by the voters of Maryland in November 1992, the former Article 5, containing the above-quoted language, was re-numbered Article 5(a), although the wording remained the same. The 1992 constitutional amendment added new paragraphs (b) and (c) to Article 5 of the Declaration of Rights, which provide as follows:

> "(b) The parties to any civil proceeding in which the right to a jury trial is preserved are entitled to a trial by jury of at least 6 jurors.

> "(c) That notwithstanding the Common Law of England, nothing in this Constitution prohibits trial by jury of less than 12 jurors in any civil proceeding in which the right to a jury trial is preserved."

Article 21 of the Declaration of Rights, relating to criminal cases, states in relevant part as follows:

> "That in all criminal prosecutions, every man [person][3] hath a right ... to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

Article 23 of the Declaration of Rights states:

> "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.

---

3. *See* Article 46 of the Declaration of Rights.

"The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $10,-000, shall be inviolably preserved."

The Maryland Constitution also contains specific provisions guaranteeing a right to have a jury determine just compensation in condemnation cases. The earliest and broadest of these is Article III, § 40, of the Constitution, which was first adopted as part of the Constitution of 1851,[4] and has remained the same ever since. It provides:

**"Section 40.  Eminent domain.**

"The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

Article III, § 40B, of the Constitution, specifically relating to highways and so-called "quick take" proceedings, states as follows:

**"Section 40B.  Same—Highways.**

"The General Assembly shall enact no law authorizing private property to be taken for public use without just compensation, to be agreed upon between the parties or awarded by a jury, being first paid or tendered to the party entitled to such compensation, except that where such property in the judgment of the State Roads Commission is needed by the State for highway purposes, the General Assembly may provide that such property may be taken immediately upon payment therefor to the owner or owners thereof by said State Roads Commission, or into Court, such amount as said State Roads Commission shall estimate to be of the fair value of said property, provided such legislation also requires the payment of any further sum that may subsequently be awarded by a jury."

---

4.  What is now Article III, § 40, was Article III, § 46, of the 1851 Constitution.

*See also* the following constitutional provisions: Article III, §§ 40A, 40C, 61(a)(2); Article XI–B, § 1(b); Article XI–C, § 1(b); Article XI–D, § 1(b).

The jury trial clause of Article 5 of the Declaration of Rights, from its inception as part of the Constitution of 1776 until the 1992 constitutional amendment, meant "that it is the historical trial by jury, as it existed when the Constitution of the State was first adopted, to which the inhabitants of [the] State are entitled," *Knee v. City Pass. Ry. Co.,* 87 Md. 623, 624, 40 A. 890, 891 (1898). A principal feature of this "historical trial by jury," to which Marylanders were constitutionally entitled under Article 5, was a twelve person jury, although the right could be waived and the parties by consent could have a jury of less than twelve persons. *See, e.g., State v. Kenney,* 327 Md. 354, 361, 609 A.2d 337, 340 (1992) ("Article 5 of the Declaration of Rights does not prohibit a jury of less than 12 persons if the parties agree"); *Bouton v. Potomac Edison Co.,* 288 Md. 305, 309, 418 A.2d 1168, 1170 (1980) (referring to a common law jury as a "jury of twelve presided over by a judge"); *State v. McKay,* 280 Md. 558, 568, 375 A.2d 228, 233 (1977) ("one of [the jury's] traditional elements [is] the 12–man jury").[5]

■ At common law, there was no right to a jury trial in condemnation cases. Furthermore, prior to 1851, there was no Maryland constitutional guarantee of a jury trial in condemnation cases, although pre–1851 statutes often provided for jury trials in such cases. The constitutional right to a jury trial in civil cases "according to the course" of the common law, provided for in the first sentence of Article 5 and in Article 23 of the Declaration of Rights, had no application to condemnation proceedings. Judge Cole for this Court sum-

---

**5.** In this respect, the jury trial right under Article 5 differed from the jury trial rights under the Sixth and Seventh Amendments to the federal constitution as construed by the Supreme Court. *See Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973); *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

marized the general law in *Bouton v. Potomac Edison Co.*, *supra*, 288 Md. at 309, 418 A.2d at 1170, as follows:

"At common law there was no right to an ordinary jury trial in condemnation cases, even on the issue of damages. 1 *Nichols' The Law of Eminent Domain* § 4.104[1] (rev.3d ed.1973). Condemnation proceedings were not ordinary suits at law. Rather, they were special proceedings, lacking the characteristics of ordinary trials, brought pursuant to the power of eminent domain, a power derived from the sovereignty of the state. *See Lore v. Board of Public Works*, 277 Md. 356, 354 A.2d 812 (1976); *Ridings v. State Roads Commission*, 249 Md. 395, 399, 240 A.2d 236 (1968); 1 *Nichols'*, *supra* at §§ 1.1–1.3; *See generally* J. Ghingher, Jr. and J. Ghingher, III, *A Contemporary Appraisal of Condemnation in Maryland*, 30 Md. L.Rev. 301, 322 (1970). It was often the practice to refer questions of damages to a commission of viewers or appraisers, usually three or five in number.

\* \* \*

"For these reasons Article 23 of the Maryland Declaration of Rights which preserves the common law right to a jury trial in civil proceedings does not include condemnation cases which are special proceedings. Thus, absent specific constitutional or statutory provisions mandating a jury trial, the issues in a condemnation case should be tried by the Court."

*See Baltimore Belt Railroad Co. v. Baltzell*, 75 Md. 94, 106–108, 23 A. 74 (1891) (no constitutional requirement of a "common law jury" in condemnation cases).

As previously discussed, the Maryland constitutional right to have a jury determine just compensation when private property is taken for public use originated with the Constitution of 1851, which contained what is now Article III, § 40. Section 40 requires that, whenever private property is taken for public use, there must be paid "just compensation, as agreed between the parties, or awarded by a Jury. . . ."

The leading case dealing with the jury trial guarantee of Article III, § 40, is *Baltimore Belt Railroad Co. v. Baltzell, supra,* 75 Md. 94, 23 A. 74. *Baltzell* involved a challenge on several constitutional grounds to a statute enacted by the General Assembly which authorized the condemnation of private real estate for the purpose of constructing a railroad. The statute provided that, if the parties could not agree upon the amount of compensation to be paid to the landowner, the railroad company should make an application

"to a justice of the peace, who shall thereupon issue his warrant to the sheriff of the county, requiring him to summon a jury of twenty, qualified to act as jurors under the laws of the State, to meet on the premises on a day named in said warrant, and from the panel thus selected, the company and the owner, may each strike off four persons, and the remaining twelve shall act as *'the jury of the inquest of damages.'*" (75 Md. at 98, 23 A. at 74).

In *Baltzell,* the landowner argued that the statute was invalid on the ground, *inter alia,* that it violated the jury trial guarantee of Article III, § 40, of the Constitution. The landowner contended, and the trial court agreed, that the jury trial right under Article III, § 40, "means a *common law jury,* and a *regular trial* in Court." 75 Md. at 106, 23 A. at 77. Consequently, according to the landowner and the trial court, the provision for a sheriff's jury summoned by warrant issued by a justice of the peace violated Article III, § 40.

Upon the railroad's appeal in *Baltzell,* this Court reversed, holding that either a common law jury or a special "jury of twelve" complied with Article III, § 40. 75 Md. at 108, 23 A. at 77. The Court's *Baltzell* opinion pointed out that "[o]rdinarily, it is true, the term 'jury' used in a Constitution or statute will be understood as meaning a common law jury," 75 Md. at 106–107, 23 A. at 77, but that Maryland history associated with condemnation proceedings suggested a broader meaning of the term as used in Article III, § 40.[6] The

---

**6.** The Court's opinion in *Baltzell,* 75 Md. at 107–108, 23 A. at 77, described this history as follows:

Court then set forth its holding as to what the framers of
Article III, § 40, meant (75 Md. at 108, 23 A. at 77, emphasis
supplied):

"What they did mean, was to provide in the first place that
*the owner should have the right or privilege of a jury of
twelve* men in determining what compensation was to be
paid, and in the next, that he should not be deprived of his
property till such compensation had been paid. And such
has been the uniform construction of this clause of the
constitution from the time of its adoption till the present."

Because the jury provided for by the statute in question
complied with Article III, § 40, as construed in the above-
quoted passage, this Court in *Baltzell* held that the statute
was valid. *See also* John J. Ghingher, Jr., and John J.
Ghingher, III, *Condemnation In Maryland,* 30 Md. L.Rev.
301, 323 (1970) ("It was undoubtedly contemplated by the

---

"But it is conceded from the earliest colonial history, and from the
formation of the State Government down to the adoption of the
Constitution, the Legislature had provided for the taking of private
property for public use, upon making compensation to the owner, as
assessed by a *special jury summoned* on warrant. At the same time
the Legislature provided that, in the opening and altering streets and
laying out country roads, the assessment of damages should be made
by examiners or commissioners, with the right of appeal to a Court of
record, where the question of damages was tried *do novo* before a
jury. But as to railroads, the Legislature without exception, provided
that the compensation should be awarded by a special jury sum-
moned as directed by sec. 167. We have then a common law jury for
streets and country roads, and a special jury for condemnation in
railroad proceedings; and when the Constitution says where property
is taken for public use the owner shall be entitled to compensation
awarded by a jury, why shall it be held to mean compensation
awarded exclusively by a common law jury in a regular Court trial?
The only question before a jury in such cases is the question of
compensation, and a jury summoned by warrant to meet on the
premises *in view* and with the opportunity of seeing the property,
ought to be quite as competent to decide that question, to say the
least, as a common law jury sitting in a common law Court. And,
besides, in two-thirds of the counties of this State, there are but *two
jury terms* a year, each about six months apart, and we can hardly
suppose the framers of the Constitution meant to delay and embar-
·rass the construction of railroads and other public improvements, by
requiring compensation to be awarded in Court by a common law
jury."

framers of article III, section 40 that the best method for protecting the property owner was to entrust the final decision as to the value of the condemned property to twelve good men and true").

Consequently, from 1851 until 1992, it seems clear that, under Article III, § 40, a landowner was entitled to a jury of twelve persons in a condemnation proceeding. The dispositive issue in this case is whether the 1992 constitutional amendment, adding new paragraphs (b) and (c) to Article 5 of the Declaration of Rights, had the effect of modifying this constitutional right.

Paragraph (b) of Article 5 provides that the parties to "any civil proceeding in which the right to jury trial is preserved are entitled" to a jury of at least six persons. Paragraph (c) states that "nothing in this Constitution prohibits trial by jury of less than 12 jurors in any civil proceeding. . . ."

The Bryans argue that Article 5, paragraphs (b) and (c), are inapplicable to condemnation cases because "condemnation proceedings are not civil actions, but are special proceedings. . . ." (Petitioners' brief at 7). They rely on the description of condemnation proceedings set forth in *Bouton v. Potomac Edison Co.*, *supra*, 288 Md. at 309, 418 A.2d at 1170. The Bryans also correctly point out that the right to a twelve person jury in condemnation cases was not guaranteed by Article 5 but was based on Article III, § 40, and that Article III, § 40, was not amended in 1992. They assert that a "constitutional provision may not be amended by implication. . . ." (Petitioners' brief at 10). The Bryans' position is "that a constitutional amendment to Article III, § 40, akin to the amendment to Article 5 of the Declaration of Rights, is required before a court may reduce the number of jurors in eminent domain proceedings from twelve to six." (*Id.* at 11).

While there is some force in the Bryans' argument, the plain language of Article 5, paragraphs (b) and (c), convinces us that a six person jury is constitutionally permissible in any proceeding in which there is a right to a jury trial except a criminal proceeding. Furthermore, nothing in the legislative

history of the Acts which proposed the 1992 amendment to Article 5, Chs. 203 and 204 of the Acts of 1992, suggests that condemnation cases were excluded from the reach of the constitutional amendment.

■ Although paragraph (a) of Article 5 is limited to cases in which there is a common law right to a jury, paragraphs (b) and (c) of Article 5 apply to "any civil proceeding" carrying a right to a jury trial. Contrary to the Bryans' view, a condemnation proceeding is a "civil proceeding." The *Bouton* case does not suggest otherwise. What *Bouton* said is that condemnation proceedings are "not *ordinary* suits at law" but are "special proceedings." 288 Md. at 309, 418 A.2d at 1170, emphasis added. Nevertheless, this Court has consistently treated condemnation proceedings as civil actions at law. *See, e.g., State Roads Commission v. Adams*, 238 Md. 371, 374 n. 1, 209 A.2d 247, 248 n. 1 (1965); *D'Arago v. State Roads Commission*, 228 Md. 490, 498, 180 A.2d 488, 492 (1962); *Bergeman v. State Roads Commission*, 218 Md. 137, 142, 146 A.2d 48, 51 (1958); *Potomac Electric Power Co. v. Birkett*, 217 Md. 476, 482, 143 A.2d 485, 489 (1958); *Herzinger v. City of Baltimore*, 203 Md. 49, 56, 98 A.2d 87, 90 (1953); *Davis v. Board of Education of Anne Arundel County*, 168 Md. 74, 76, 176 A. 878, 879 (1935); *Ridgely v. Mayor & City Council of Baltimore*, 119 Md. 567, 577, 87 A. 909, 912–913 (1913). Consequently, a condemnation case clearly falls within the language of "any civil proceeding."

It is also significant that paragraph (c) of Article 5 does not say that nothing in this *Article* prohibits trial by jury of less than 12 persons. Instead, paragraph (c) states that "nothing in this *Constitution* prohibits trial by jury of less than 12 jurors . . ." (emphasis supplied). This language encompasses Article III, § 40, as well as all other provisions of the Maryland Constitution granting a right to a jury trial in civil cases.

It seems obvious that the purpose of the 1992 amendment to Article 5 of the Maryland Declaration of Rights was to permit a six person jury in all cases except criminal cases. There-

fore, a six person jury is permissible in condemnation proceedings.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.*