82 A.3d 187

**MONTGOMERY COUNTY, Maryland**

v.

**Khana SOLEIMANZADEH, et al.**

**Montgomery County, Maryland**

v.

**Joseph Soleimanzadeh.**

Nos. 25, 27, Sept. Term, 2013.

Court of Appeals of Maryland.

Dec. 23, 2013.

378

380

Robert Birenbaum, Associate County Atty. (Marc P. Hansen, County Atty., Edward B. Lattner, Chief and Eric Willis, Associate County Atty., Rockville, MD), on brief, for petitioner.

No argument on behalf of the Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and IRMA S. RAKER (Retired, Specially Assigned), JJ.

HARRELL, J.

These two eminent domain cases were disposed of by the Circuit Court for Montgomery County by the entry of summary judgment, pursuant to Maryland Rule 2–501, in favor of the condemnor, Petitioner, Montgomery County, Maryland (the "County"). The facts in these cases are largely identical (except as noted) and, thus, we are able to answer in a consolidated opinion the questions presented. Earlier in the proceedings of both cases, the Circuit Court imposed discovery violation sanctions precluding the respective landowners, Respondents Khana Soleimanzadeh and Joseph Soleimanzadeh (the "Soleimanzadehs") in No. 25 and Respondent Joseph Soleimanzadeh in No. 27, from introducing any evidence as to the fair market value of the taken properties. Because of these sanctions, the Respondents were unable to generate through affirmative evidence a genuine dispute of material

fact concerning the County's appraisal valuations of the taken properties in either case. Thus, the Circuit Court granted the County's Motions for Summary Judgment on the issue of just compensation in both cases.

In No. 25, the Court of Special Appeals held, in a reported opinion, that the Circuit Court erred in granting summary judgment. *Soleimanzadeh v. Montgomery County*, 208 Md. App. 107, 56 A.3d 349 (2012). The court reasoned that summary judgment is not available in condemnation proceedings on the question of just compensation because a landowner cannot be deprived of the constitutional right to have a jury determine just compensation. In No. 27, the Court of Special Appeals, in an unreported opinion, adopted the reasoning and holding of the reported opinion in No. 25. In this consolidated opinion, we reverse both judgments and hold that summary judgment was available in each case and was granted properly.

## FACTS

In 2007, the County took a portion of the subject properties, one owned by Joseph Soleimanzadeh and the other owned by the Soleimanzadehs collectively,[1] for the purpose of road improvement, pursuant to an Advance Take Action authorized by § 49–50 of the Montgomery County Code and Art. III, § 40A of the Maryland Constitution. After the parties were unable to agree upon the value to be paid for either of the takings, the County filed a Complaint for Condemnation in the Circuit Court on 10 April 2009, pursuant to Maryland Rule 12–205, in each case. Because the proceedings in the Circuit Court were identical in these cases, we review in detail only the facts presented in the Soleimanzadehs's case below and, to avoid repetition, simply note that the proceedings in the Circuit

---

1. In the Soleimanzadehs's case, the County took 975 square feet of land in fee simple and 1,300 square feet of land for a revertible slope easement. In Joseph Soleimanzadeh's case, the County took 1,554 square feet of land in fee simple and 710 square feet of land for a revertible slope easement.

Court were identical or parallel, for all relevant purposes of this appeal, for the case of Joseph Soleimanzadeh.

On 5 October 2009, the County served the Soleimanzadehs with written discovery in the form of interrogatories and a request for the production of documents. Pursuant to Maryland Rules 2–421(b) and 2–422(c), the Soleimanzadehs's responses were due on 7 November 2009. On 6 November 2009, the day before the Soleimanzadehs's responses were due, counsel for the Soleimanzadehs advised the County that the discovery requests had been misplaced and not re-discovered until 5 November 2009.[2] Counsel requested a forty-five day extension to comply fully with the requests. The County agreed. On 14 December 2009, according to the County's later Motion to Compel and/or for Sanctions, the Soleimanzadehs's counsel advised the County that they "would not file any responses to the discovery requests served by the County" and that the County should "go to the court."

After the expiration of the initial and sole forty-five day extension, the County filed its Motion to Compel and/or for Sanctions on 23 December 2009.[3] The Soleimanzadehs did not file a response. On 25 January 2010, the Circuit Court granted the County's unopposed motion, entering an order on 27 January 2010 that directed the Soleimanzadehs to file complete responses to the requested discovery within ten days

---

**2.** In the Circuit Court, the same attorney represented the condemnees in both cases.

**3.** Although largely irrelevant for the purposes of this opinion because the Soleimanzadehs did not challenge in their appeal to the intermediate appellate court the grant of the County's Motion to Compel and/or for Sanctions, we note that the County argued, *inter alia*, in its motion that "[t]he County's inability to obtain the requested discovery from the [Soleimanzadehs] is prejudicing the County's ability to (1) conduct further discovery in this matter; (2) prepare for dispositions of the [Solcimanzadehs] and [their] designated experts; and (3) properly prepare this case for trial." The County stated that the deadline for completion of discovery for the case was 5 January 2010, and that when the County requested that the Soleimanzadehs's attorney agree to file a Consent Motion to Extend the time to allow additional time to conduct discovery for the purpose of taking depositions, the Solcimanzadehs's counsel refused, without explanation.

of the entry of the order. The order directed further that, if the Soleimanzadehs did not do so within the aforementioned ten days, they "shall not be permitted to introduce any evidence in support of their claims for just compensation and damages." The Soleimanzadehs failed to file any responses to the requested discovery within the ten days of the entry of the order. Accordingly, the sanctions would become self-executing had the matter come to trial.

While the County's Motion to Compel and/or for Sanctions was pending, the County filed a Motion for Partial Summary Judgment on 15 January 2010 as to three issues, each averred to be improper for a jury's determination: "(1) public purpose and necessity, (2) the amount of area taken and entitlement to compensation, and (3) the right to condemn and legality of this condemnation proceeding." [4] With regard to the issue of just compensation, the County requested that "the Court submit the issue of just compensation to be awarded to [the Soleimanzadehs] for the property rights taken to the jury." The Circuit Court held a hearing on this motion on 31 March 2010 and granted the Motion for Summary Judgment as to public purpose and necessity, but denied other relief at that point in time.

On 26 April 2010, the scheduled date of trial, the County filed a Motion for Summary Judgment or, in the Alternative, for Judgment by Default, on the issue of just compensation and damages on the grounds that the Soleimanzadehs were unable to present any evidence of value of the taken property greater than the appraisal value proposed by the County due

---

4. The County argued that these three issues were improper for a jury's determination due to the specific role of the jury and Court in condemnation cases: "In a condemnation case, a jury is responsible for determining the amount of just compensation due to the property owner, while '[i]ssues relating to other possible elements, such as the right to condemn, public purpose, or necessity, are exclusively for the judge.'" *J.L. Matthews, Inc. v. Md.–Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 88, 792 A.2d 288, 298 (2002) (alteration in original) (quoting *Utilities, Inc. of Md. v. Washington Suburban Sanitary Comm'n*, 362 Md. 37, 48, 763 A.2d 129, 135 (2000)). Thus, the County averred it was entitled to judgment as a matter of law on these issues.

to the recently imposed discovery sanctions. The Circuit Court heard arguments on that same day and entered an Order on 3 May 2010, condemning the property and awarding the Soleimanzadehs $35,000, the amount proffered by the County's expert witness in an affidavit filed with the County's motion, as just compensation for the taking of the real property. On the same day, the Circuit Court entered an Order condemning Joseph Soleimanzadeh's property and awarding him $52,000.

Joseph Soleimanzadeh and the Soleimanzadehs, with new counsel in tow, appealed to the Court of Special Appeals the grant of the County's motions for summary judgment in both cases. Notably, neither Joseph Soleimanzadeh nor the Soleimanzadehs challenged in their appeals the Circuit Court's imposition of discovery sanctions. On 26 November 2012, the Court of Special Appeals, in a reported opinion, reversed the Circuit Court's grant of summary judgment in the Soleimanzadehs's case. *Soleimanzadeh v. Montgomery County*, 208 Md. App. 107, 56 A.3d 349 (2012). The intermediate court held in *Soleimanzadeh:*

> Although the rules of civil procedure apply to condemnation proceedings in general, we hold that the summary judgment rule, Rule 2–501, does not apply in such cases to the issue of just compensation, because a landowner cannot be deprived of the constitutional right to have a jury award just compensation. In the instant case, the trial court's grant of the County's motion for summary judgment had the effect of denying the Soleimanzadehs their constitutional right to an award of just compensation by a jury, and thus the court erred in so doing.

*Id.*, 208 Md.App. at 134, 56 A.3d at 365. In the case of Joseph Soleimanzadeh, the Court of Special Appeals, in an unreported opinion, reversed the Circuit Court's grant of summary judgment, adopting the reasoning of *Soleimanzadeh v. Montgomery County*, 208 Md.App. 107, 56 A.3d 349 (2012).

The County petitioned this Court for writs of certiorari in each case and we granted the petitions, 430 Md. 644, 62 A.3d 730 (2013), to consider the following questions:

(1) Where there is no genuine dispute of material fact as to the valuation of a property taken in an eminent domain proceeding, may the trial court enter judgment pursuant to MD Rule 2–501 in favor of the condemnor as a matter of law?

(2) Does a condemnee have a constitutionally protected right to have a jury determine just compensation even when sanctions against the condemnee prohibit the condemnee from introducing evidence in support of a claim for just compensation and the condemnee fails to show the existence of a dispute of material fact as to the compensation to be awarded?

(3) Does a condemnee have a burden to produce evidence when it disputes a condemnor's estimate of fair market value?

(4) Did the award of summary judgment in favor of the condemnor impair the condemnees' right to a jury trial?

(5) Can the right to a jury trial in an eminent domain proceeding be waived by the landowner's failure to follow clearly proscribed rules?

On 25 September 2013 (after we issued our writ), a letter from the combined Soleimanzadehs's counsel, dated 17 September 2013, was received asking that this Court treat the letter as a motion for the following relief in each case: "(1) That [this Court] accept the briefs [counsel] filed in the Court of Special Appeals as meeting [his] brief-filing requirements in this Court; and (2) That [counsel] be allowed to appear for oral argument. If [this Court] den[ies] my proposed relief, then [counsel is] willing to stand on the briefs [counsel] filed in the Court of Special Appeals and on Judge Woodward's opinion." In response, the County filed a letter opposing this request for several reasons, namely, that Joseph Soleimanzadeh's and the Soleimanzadehs's Briefs filed in the Court of Special Appeals were not responsive to the County's Brief filed in this Court and addressed issues that are not within the ambit of the questions presented in this Court and, lastly, that, if the Respondents' request to appear for oral argument

is granted, the County may be forced to confront arguments by Respondents' counsel that the County has not seen first in writing prior to the argument date. On 26 September 2013, the Court denied the relief sought by the Soleimanzadehs and Joseph Soleimanzadeh. Consequently, no briefs were filed with this Court by Respondents. At oral arguments, we heard solely from the County.

## ANALYSIS

■ This Court must determine first whether the Circuit Court was permitted to grant summary judgment on the issue of just compensation in a condemnation proceeding. The Court of Special Appeals held in its reported opinion in *Soleimanzadeh* that "the summary judgment rule, Rule 2–501, does not apply in [condemnation proceedings] to the issue of just compensation, because a landowner cannot be deprived of the constitutional right to have a jury award just compensation." *Soleimanzadeh*, 208 Md.App. at 134, 56 A.3d at 365. We reverse the Court of Special Appeals and hold that the summary judgment rule may apply in condemnation proceedings to the issue of just compensation because Article III, § 40 of the Maryland Constitution provides the landowner with the opportunity to have a jury award just compensation in such cases, provided the landowner litigates properly the case according to the Maryland Rules. Next, we review whether summary judgment was granted properly in these specific cases. We conclude that, because the Soleimanzadehs were precluded from introducing any evidence as to the value of the taken property (an essential element of their claim in the condemnation action), the granting of summary judgment was indeed proper.[5]

---

**5.** We re-emphasize that an important procedural aspect of these cases limits our analysis. Before this Court is the Circuit Court's grant of the County's Motions for Summary Judgment. The Soleimanzadehs did not challenge on appeal the Circuit Court's orders granting the County's Motions to Compel and/or for Sanctions. Instead, the Soleimanzadehs and the County proceeded before the Court of Special Appeals on the assumption that the sanctions were imposed properly.

## I. The Issue of Just Compensation in Condemnation Proceedings Is Subject to the Maryland Rules of Civil Procedure, Including the Availability of Summary Judgment.

As recognized by the Court of Special Appeals in *Soleimanzadeh*, 208 Md.App. at 118, 56 A.3d at 356, condemnation actions are "special proceedings" that lack the " 'characteristics of ordinary trials' " and are " 'brought pursuant to the power of eminent domain, a power derived from the sovereignty of the state.' " *Bryan v. State Roads Comm'n*, 356 Md. 4, 10, 736 A.2d 1057, 1060 (1999) (quoting *Bouton v. Potomac Edison Co.*, 288 Md. 305, 309, 418 A.2d 1168, 1170 (1980)). Regardless of the "special" and "unique" nature of the proceedings, this Court has treated repeatedly condemnation proceedings as civil procedures. As was stated in *Bryan*,

> [C]ondemnation proceedings are "not *ordinary* suits at law" but are "special proceedings." [*Bouton* ], 288 Md. at 309, 418 A.2d at 1170, emphasis added. **Nevertheless, this Court has consistently treated condemnation proceedings as civil actions at law.** *See, e.g., State Roads Commission v. Adams*, 238 Md. 371, 374 n. 1, 209 A.2d 247, 248 n. 1 (1965); *D'Arago v. State Roads Commission*, 228 Md. 490, 498, 180 A.2d 488, 492 (1962); *Bergeman v. State Roads Commission*, 218 Md. 137, 142, 146 A.2d 48, 51 (1958); *Potomac Electric Power Co. v. Birkett*, 217 Md. 476, 482, 143 A.2d 485, 489 (1958); *Herzinger v. City of Baltimore*, 203 Md. 49, 56, 98 A.2d 87, 90 (1953); *Davis v. Board of Education of Anne Arundel County*, 168 Md. 74, 76, 176 A. 878, 879 (1935); *Ridgely v. Mayor & City Council of Baltimore*, 119 Md. 567, 577, 87 A. 909, 912–913 (1913).

---

We acknowledge that, had the Soleimanzadehs challenged the sanctions for the discovery violations, we would be faced with the more difficult question of whether the Circuit Court abused its discretion in imposing discovery sanctions for delayed discovery responses that resulted in precluding the Soleimanzadehs from introducing evidence necessary to establish their theory of damages (and, therefore, ultimately require a jury trial on the issue of just compensation).

> Consequently, **a condemnation case clearly falls within the language of "any civil proceeding."**

*Id.,* 356 Md. at 14, 736 A.2d at 1062–63 (emphasis added). As such, "under Rule 1–101(b), the rules of civil procedure contained in Title 2 apply in general to condemnation proceedings." *Soleimanzadeh,* 208 Md.App. at 129, 56 A.3d at 362 (citing *Hammond v. State Roads Comm'n,* 241 Md. 514, 517, 217 A.2d 258, 260 (1966)).

At the center of the present dispute is the exception clause to Rule 1–101(b). The Court of Special Appeals opined,

> The County, however, overlooks the exception clause to Rule 1–101(b). Rule 1–101(b) states: "Title 2 applies to civil matters in the circuit courts, except for Juvenile Causes under Title 11 of these Rules and *except as otherwise specifically provided or necessarily implied.*" (emphasis added) *See Hammond,* 241 Md. at 517, 217 A.2d 258 (stating that "[t]he acquisition of property by condemnation is a special proceeding and as such, as are other special proceedings, is regulated, not only by the particular rules concerning the specific proceeding involved, but also *by such of the general rules of procedure as may be applicable.*" (emphasis added)).

*Id.,* 208 Md.App. at 129–30, 56 A.3d at 362. Thus, according to the Court of Special Appeals, "[t]he question raised then is whether Article III, § 40 and Rule 12–207(a) specifically provide for an exception to the summary judgment rule on the issue of a jury trial in condemnation proceedings." *Id.,* 208 Md.App. at 130, 56 A.3d at 362. The Court of Special Appeals found that "the County was not entitled to judgment as a matter of law, because the Constitution *requires* that just compensation be awarded by a jury, not by a court" and concluded that "the rules of civil procedure apply to condemnation proceedings, except for the summary judgment rule, Rule 2–501, where the application of such rule would preclude the award of just compensation by a jury." *Id.*

We disagree with the Court of Special Appeals's conclusion. Condemnation proceedings are unique types of actions in

which, due to practical necessity, the burden of production facet of the burden of proof is the focal point of a trier of fact's ascertainment of the value of just compensation. As explained further below, as a practical matter, the condemnee must bear that burden to produce some information demonstrating his theory of the value of the property. Otherwise, with all other issues decided (as was the case here), the jury had no triable issue to decide and the right to jury consideration was foregone.

This conclusion does not violate any right provided in the Constitution or the Rules. Article III, § 40 and Rule 12–207(a) provide that the condemnee have the *opportunity* to present evidence before a jury on the issue of just compensation in eminent domain proceedings. This right does not include, however, the right of the condemnee to sit on his, her or its hands, ignore legitimate and valid orders of the trial court, and then claim some special privilege conferred by the constitutional right to submit their "case" to the jury. The general rules of civil procedure apply still. Thus, we conclude that summary judgment is available in condemnation proceedings on the issue of just compensation where no genuine question or triable issue of value is generated. Competent evidence offered by the condemnor established a value on which judgment may be entered.

**A. Due to the unique nature of condemnation proceedings and in order to get to the jury, the condemnee must produce some information demonstrating the value of the taken property.**

Particularly where value is concerned, "[c]ondemnation cases are fundamentally different from other kinds of cases . . ." *Solko v. State Roads Comm'n,* 82 Md.App. 137, 147, 570 A.2d 373, 378 (1990). The fundamental difference lies in the nature of what is being ascertained: "There is no 'fact' which one party is attempting to show; rather, there are experts who provide testimony tending to give credence to the value each party has assigned to the property." *Id.,* 82 Md.App. at 147–48, 570 A.2d at 378. We conclude that, due to

practical necessity that stems from this unique nature of condemnation proceedings, each party must bear the burden of producing admissible and competent facts and/or opinions demonstrating the value of the land taken. This practical necessity is demonstrated further when evaluating the role that a jury plays in ascertaining just compensation in condemnation cases and the fact that the jury must base its award upon at least some evidence.

The Court of Special Appeals discussed the unique nature of these proceedings and its implications in *Solko,* which held that "the usual burden of proof [jury] instruction as to value has no place in a condemnation case" because the burden of persuasion facet of the burden of proof is inapposite in condemnation proceedings. *Id.,* 82 Md.App. at 146, 570 A.2d at 377. The court noted and emphasized that the reasoning behind this difference in treatment was the unique nature of condemnation cases:

Condemnation cases are fundamentally different from other kinds of cases where value is concerned. There is no "fact" which one party is attempting to show; rather, there are experts who provide testimony tending to give credence to the value each party has assigned to the property.

*Solko,* 82 Md.App. at 147–48, 570 A.2d at 378.

To illustrate this unique nature and its implications further, the court quoted an opinion by the Supreme Court of Alaska, *State of Alaska v. 45,621 Square Feet of Land,* 475 P.2d 553, 555 (Alaska 1970), which interpreted that state's constitutional requirement that landowners be paid just compensation for taken property:

"In a condemnation proceeding ... where the sole issue is determination of just compensation, procedural rules involving the concept of risk of failure to persuade are inapposite. Here the focal point of the trier of fact's inquiry is the ascertainment of just compensation. Thus, regardless of whether the condemning agency or the property owner meets a given burden of persuasion, Alaska's constitutional mandate requires that the owner be awarded just compen-

sation for the property he has lost. In the usual condemnation case, the jury is confronted with conflicting opinions as to value. The jury is not faced with the necessity of finding a particular value or no value at all. As to the issue of fair market value, both the condemning agency and the property owners may produce competent evidence of the fair market value of the condemned property. Absent the production of such evidence by either party, the triers of fact will determine fair market value solely from the other party's evidence. *The burden of production facet of burden of proof,* rather than the risk of non-persuasion aspect, *is the more meaningful concept in the trial of a condemnation proceeding.*"

*Solko,* 82 Md.App. at 147, 570 A.2d at 378 (quoting *45,621 Square Feet of Land,* 475 P.2d at 555) (emphasis added).

The *Solko* court emphasized that, even though condemnation actions are unique and the concept of risk of failure to persuade is inapposite in such cases, *"[t]hat is not to say that no burden falls upon the condemnee."* *Solko,* 82 Md.App. at 148, 570 A.2d at 378 (emphases added). In fact, "[a]s a practical matter, ... he or she *[the condemnee] bears the burden of producing the information which demonstrates that the land taken is worth more than the condemnor has established ...".* *Id.* (emphasis added).

The practical necessity of this requirement appears further when analyzing the role of a jury in ascertaining just compensation in eminent domain proceedings. We have stated repeatedly that "[t]he question of fair market value is ultimately an issue for the trier of fact." *Id.* (citing *Colonial Pipeline Co. v. Gimbel,* 54 Md.App. 32, 38, 456 A.2d 946 (1983)). "The jury uses its independent judgment regarding the weight of any facts before it ..." *Id.* (citing *Greater Baltimore Consol. Wholesale Food Market Auth. v. Duvall,* 255 Md. 90, 97, 256 A.2d 882 (1969)). In exercising its independent judgment, " '[t]he jury may properly consider various elements that influence market value at the time of the taking in its determination of damages.' " *Id.* (quoting *Dodson*

*v. Anne Arundel Cnty.*, 294 Md. 490, 495, 451 A.2d 317 (1982)). "So far as value is concerned, the jury is free to arrive at its own evaluation, *so long as there is evidence to support such an award.*" *Id.* (emphasis added). This limitation on the judgment of a jury award is critical. The jury may not select an arbitrary amount of compensation and damages unsupported by any evidence.

■ Although this Court and the Court of Special Appeals has permitted condemnees to dispute just compensation on the basis of a plethora of types of information, the Maryland courts have always—and rightfully so—required the condemnee to produce some information demonstrating value. "If the landowners disagree with the State's estimate of the property's value, they need to produce evidence that the land is, in fact, worth more." *Solko,* 82 Md.App. at 148–49, 570 A.2d at 378. Otherwise, there is no triable issue for a jury to decide.

**B. Permitting summary judgment does not violate the constitutional right to have the *opportunity* for a jury trial to ascertain just compensation in condemnation actions.**

■ The Court of Special Appeals reasoned that summary judgment would never be appropriate in a condemnation action because it would violate the condemnee's constitutional right to receive a jury award of just compensation. We conclude, however, that the grant of summary judgment, where appropriate, does not violate that right of the condemnee. Article III, § 40 of the Maryland Constitution provides the condemnee the *opportunity* to have a jury award just compensation for taken land, but only if the condemnee "tees-up" the issue by adducing some evidence of a value greater than that offered by the condemnor. This right does not include the right to frustrate the efficient administration of the court system without any repercussions. Accordingly, we

hold that the right to a jury award of just compensation, like other civil disputes, is subject to the summary judgment rule, Rule 2–501.[6]

To provide an appropriate background for this discussion, we begin with a brief analysis of the relevant constitutional provision and Rule providing the condemnee the opportunity to have a jury award of just compensation in condemnation proceedings. "At common law there was no right to an ordinary jury trial in condemnation cases, even on the issue of damages." *Bouton*, 288 Md. at 309, 418 A.2d at 1170 (citing 1 Nichols' The Law of Eminent Domain § 4.105(1) (rev.3d ed.1973)). Instead, the customary practice varied depending on the jurisdiction. Early in the history of Maryland, the State "provided for a sheriff's jury to fix damages for the taking of land for certain purposes." *Id.* (citations omitted).

For these reasons Article 23 of the Maryland Declaration of Rights which preserves the common law right to a jury trial in civil proceedings does not include condemnation cases which are special proceedings. Thus, absent specific consti-

---

6. The dissent insinuates that the County had some doubt about the constitutionality of summary judgment proceedings in eminent domain cases, as evidenced supposedly by the fact that the County did not seek summary judgment on the issue of just compensation until its *second* motion for summary judgment. Dissent op. at 404 n. 4, 82 A.3d at 203–04 n. 4. The dissent misunderstands and, thus, mischaracterizes the County's position. When the County filed its initial motion for partial summary judgment on 15 January 2010, its motion to compel and/or for discovery sanctions was pending. The discovery sanction (upon which the County's position in its second summary judgment motion, where just compensation was involved, was granted) was not in effect until ten days after 27 January 2010, the date of entry of the Circuit Court's order. The County filed its second motion to dismiss or, in the alternative, for judgment by default on 26 April 2010 on the *new* grounds that the Soleimanzadehs were incapable of introducing any affirmative evidence of a value greater than that proffered by the County for the taken property due to the *recently* entered Circuit Court order. Prior to the Soleimanzadehs' failure to comply with the Circuit Court's order in the aforementioned time period, the jury could still have been responsible arguably for determining the amount of just compensation. Thus, that the County left impliedly the issue of just

tutional or statutory provisions mandating a jury trial, the issues in a condemnation case should be tried by the Court. *Id.* (citing 1 Nichols, *supra* § 4.105(5) at p. 4–119).

"Article III § 40 of the Maryland Constitution is the specific constitutional provision that mandates a jury trial on the issue of just compensation in condemnation cases." *Soleimanzadeh,* 208 Md.App. at 118, 56 A.3d at 356. This constitutional provision provides:

> The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation.

Art. III, § 40, Maryland Constitution. In contrast, though, "the issue of the right to condemn has been for the court's determination." *Bouton,* 288 Md. at 310, 418 A.2d at 1170.

It is clear that Maryland Rule 12–207, formerly Md. Rule U15, " 'is intended to implement Art. III, § 40, which provides for a jury on the issue of the quantum of compensation due.' " *Soleimanzadeh,* 208 Md.App. at 125, 56 A.3d at 360 (quoting *Bouton,* 288 Md. at 310, 418 A.2d at 1171) (emphasis omitted). This Rule provides, in pertinent part: "An action for condemnation shall be tried by a jury unless all parties file a written election submitting the case to the court for determination." Md. Rule 12–207(a).[7]

According to the Court of Special Appeals, the alleged problem (or exception) arises in this case because of the explicit language in the Constitution and the Maryland Rules that a jury *shall* decide the issue of damages in condemnation cases. The Court of Special Appeals found that this explicit language mandates that the exception clause of Rule 1–101(b) apply such that summary judgment is not available in condemnation actions and, therefore, the Circuit Court could not enter

---

compensation for the jury in its first motion for summary judgment does not represent any "doubt."

7. Effectively, that is the posture the parties were in because of the County's motions for summary judgment and the sanctions order brought on by Respondents' refusal to respond to discovery requests.

judgment for the County as a matter of law. Contrary to the intermediate court's opinion, we find this right does not guarantee a right free from reasonable restriction or regulation.

■ This Court has recognized previously that the right to a jury is not absolute in all circumstances, but rather is the *opportunity* for a condemnee to have a jury award of compensation. As stated in *Baltimore Belt R.R. Co. v. Baltzell*, 75 Md. 94, 23 A. 74 (1891),

> The jury is the tribunal, and the sole tribunal, by whom the amount of compensation is to be determined, **and, this being so, it would seem but fair and reasonable that the owner should have the *opportunity* of submitting to the jury such evidence as he might deem proper in regard to the value of his property.**

*Id.*, 75 Md. at 105, 23 A. at 76–77 (emphases added). The condemnee, however, may relinquish this opportunity by his failure to abide by the governing rules of procedure applicable before the matter is submitted to a jury.

For example, in *Bushey v. State Roads Commission*, 231 Md. 154, 189 A.2d 98 (1963), the property owners, dissatisfied with the amount of compensation awarded by the review board, failed to comply with the statutory provisions requiring the property owners to file an appeal within thirty days in order to proceed with the usual condemnation proceedings, which would have entitled them to the opportunity for a jury award of just compensation. *Id.*, 231 Md. at 156–57, 189 A.2d at 99. We concluded that, "[a]s the 'appeal' was not taken within the time prescribed by the statute, the trial judge was correct in dismissing it." *Id.*, 231 Md. at 158, 189 A.2d at 100 (citing *Kloze v. Provident Savings Bank of Baltimore*, 220 Md. 469, 154 A.2d 711 (1959)).

Similar to the *Bushey* Court requiring the condemnee to follow appropriate procedures or risk dismissal of his claim, we conclude that neither the Maryland Constitution nor Rules preclude the Circuit Court from requiring a condemnee to abide with rules of civil procedure (including discovery) or face possible consequences, which may include sanctions for failure

to make discovery and a resultant grant of summary judgment to the condemnor.[8]

## II. Summary Judgment Was Appropriate in this Case Because There Was No Genuine Dispute of Material Fact and the County Was Entitled to Judgment as a Matter of Law.

 Because we find that summary judgment is not precluded entirely in appropriate circumstances in eminent domain proceedings, without violating any constitutional right or rule, we now examine whether these cases were such appropriate cases *vel non.* In reviewing the Circuit Court's granting of summary judgment, we are guided by the following standard of review:

The trial court may grant summary judgment only when "there is no genuine dispute of material fact" and "the party in whose favor judgment is entered is entitled to judgment as a matter of law." " 'In reviewing a grant of a summary judgment, we are first concerned with whether a genuine dispute of material fact exists' and then whether the movant is entitled to summary judgment as a matter of law." **The purpose of summary judgment is to determine whether there are facts in dispute that must be resolved through a more formal resolution process, such as a trial on the merits. Thus, in order to defeat a motion for summary judgment, the party opposing the motion must present admissible evidence demonstrating the existence of a dispute of material fact.** " 'A material fact is a fact the resolution of which will somehow affect the outcome of the case.' " Moreover, "[i]n determining whether a summary judgment has properly been granted, an appel-

---

8. Nonetheless, summary judgment should be granted sparingly in condemnation proceedings. As discussed earlier in this opinion, the condemnee has many options for adducing appropriate admissible evidence regarding his, her or its theory of the value of the taken land. Because of this plethora of options available to a condemnee to develop a triable *issue* regarding value, just compensation in condemnation proceedings should rarely be appropriate for summary judgment.

late court must consider the facts stated, and the proper inferences to be drawn therefrom, in the light most favorable to the party against whom the motion is made."

If there is no dispute of material facts, then our role is to determine whether the trial court was correct in granting summary judgment as a matter of law. Whether summary judgment is properly granted as a matter of law is a question of law and therefore review of the granting of summary judgment is *de novo*. "The standard of appellate review of a summary judgment is whether it is 'legally correct.' "

*Hines v. French*, 157 Md.App. 536, 549–50, 852 A.2d 1047, 1054–55 (2004) (emphasis added) (internal citations omitted).

In the present cases, the Circuit Court's order precluded the Soleimanzadehs from introducing any evidence as to the fair market value of the taken property. Such evidence was essential to establish their claim to damages greater than the County's appraisal. Because the Soleimanzadehs were unable to establish contrary values, the Circuit Court found no genuine dispute of material fact existed and granted the County's motion for summary judgment. On appeal to the Court of Special Appeals, the Soleimanzadehs argued that, even though they were precluded from introducing affirmative evidence, they might have been able to establish a value greater than $35,000 [9] through cross-examination of the County's appraiser or through the jury view of the property. The Soleimanzadehs argued that, through those avenues, they would be able to generate a genuine dispute of material issue to be tried to a jury. The Court of Specials Appeals agreed.[10] We do not.

---

**9.** Joseph Soleimanzadeh made the parallel argument that he might have been able to establish a value greater than $52,000.

**10.** The Court of Special Appeals's opinion appears conflicted as to whether it agrees that these two avenues could have developed a genuine dispute of material issue. The court stated early in its opinion that "[its] review of the record indicates that the trial court did not err in ruling that there was no genuine dispute as to a material fact raised by the Soleimanzadehs regarding the valuation of the property subject to condemnation." *Soleimanzadeh*, 208 Md.App. at 117, 56 A.3d at

In regard to the Soleimanzadehs cross-examining the County's expert witness, we note that, while cross-examination may expose doubts as to whether the County's valuation is just, we doubt its efficacy at producing affirmative evidence of a higher value. Without affirmative evidence as to the value of the taken land, the jury would not be able to award an amount higher than the value tendered by the sole expert (and sole fact) before the court. Thus, we conclude the right to cross-examine the County's witness alone is quite likely incapable of generating a triable issue of material fact by supplying a basis for a jury to award a higher value based on some evidence.

The Court of Special Appeals described the requirement of a jury view as "[p]erhaps the most important distinction between condemnation proceedings and other civil proceedings." *Soleimanzadeh*, 208 Md.App. at 132, 56 A.3d at 364. This general requirement is an important part of condemnation cases:

> The jury view (i.e. the jury going to view the property that is the subject of the condemnation action) is an impressive part of the evidence in the case. The jurors will have the opportunity during the view to see things for themselves. They can judge the neighborhood, the condition of the premises, and other aspects of the property that will be described in photographs or in testimony of witnesses. It is perhaps the most vivid demonstrative evidence in a condemnation case.

355. Rather, according to the intermediate appellate court, "the instant case turns on whether the County is entitled to judgment *as a matter of law*." *Id.* Later, however, the court opines, "the sanctions imposed on the Soleimanzadehs for discovery violations that precluded the introduction of evidence in support of their claim for just compensation do not prevent a jury from performing its function of assessing the amount of just compensation." *Id.*, 208 Md.App. at 132, 56 A.3d at 364. The court went on to analyze how the jury view and the right to cross-examine the County's expert are crucial to determining the amount of just compensation to be awarded to a property owner. *Id.*, 208 Md.App. at 132–34, 56 A.3d at 364–65.

*Id.* (quoting 7 Nichols' The Law of Eminent Domain § G8.10[4] (rev.3d ed.2006)). The jury is permitted generally to use its view of the property as a guide to determine how much weight to give to the other evidence, such as the testimony of experts and other witnesses, in ascertaining the value of the taken property in a condemnation action.

While this procedure may carry great weight generally, it is not appropriate or available in all condemnation actions. This Court, in *Bern–Shaw Limited Partnership v. Mayor and City Council of Baltimore,* 377 Md. 277, 833 A.2d 502 (2003) (a quick-take case), held that the jury's view of the property fourteen months after its condemnation was prejudicial and should not have occurred. *Id.,* 377 Md. at 300, 833 A.2d at 516. Like *Bern–Shaw Limited Partnership,* the present case is a quick-take action as well. In this case, the property was taken on 15 May 2007. The scheduled date of trial was almost three years later on 26 April 2010. The time period between the condemnation and trial was much longer than the fourteen months viewed as prejudicial in *Bern–Shaw Limited Partnership.* Although the record does not establish whether the condition of the property changed substantially during that time, as was the case in *Bern–Shaw Limited Partnership,* we conclude that the jury's viewing of the condemned properties could not have contributed affirmative evidence sufficient to assign a higher value than the County's appraisals. As such, the usual opportunity for a view was not an additional opportunity to develop material facts that would have established a triable dispute in these cases.

 The Court of Special Appeals races past this important point in its opinion, stating in a footnote only:

> We recognize that in the case *sub judice* the County employed a "quick-take" proceeding, and thus a jury view is not required. Md. Rule 12–207(c); *Bern–Shaw Ltd. P'ship v. Mayor & City Council,* 377 Md. 277, 298, 833 A.2d 502 (2003). Nevertheless, given the constitutional right accorded to a landowner to have a jury decide just compensation,

we believe that a jury view is required in a "quick-take" proceeding if the landowner so elects.

*Soleimanzadeh,* 208 Md.App. at 132, 56 A.3d at 364 n. 10. Because we disagree with the premise that the constitutional right to have a jury decide just compensation must be accorded to the landowner regardless of the circumstances or the landowners' inactions, as discussed *supra* Part I, we disagree with this conclusion as well. Where land is taken pursuant to a "quick-take" proceeding, a jury view is not required in all cases—regardless if the landowner wishes one. *See Bern–Shaw Ltd. P'ship,* 377 Md. at 298, 833 A.2d at 514.

Because the jury was not required to view the properties in these cases and the landowners were precluded from presenting any evidence otherwise, no evidence existed upon which the jury could base an amount of damages that was greater than the amounts reflected in the appraisals by the County's expert. Where a Circuit Court excludes certain evidence necessary to a party's claim, "the granting of summary judgment follow[s] logically and necessarily from that exclusion." *Heineman v. Bright,* 124 Md.App. 1, 12, 720 A.2d 1182, 1187 (1998) (concluding that, because the trial court did not err in excluding the evidence, the granting of summary judgment which followed logically and necessarily from that exclusion was proper also). *See also Shelton v. Kirson,* 119 Md.App. 325, 333, 705 A.2d 25, 29 (1998) ("If ... [the Circuit Court's] preclusion of the evidence was proper, as we have held it was, then ... the granting of summary judgment would logically have followed from the resulting lack of evidence and [the appellant] would have no basis for attacking the granting of summary judgment."). In both of these cases, the Circuit Court's exclusion of any evidence from the landowners regarding their view of just compensation, which was necessary to their claims being triable, rendered the granting of summary judgment a logical and necessary consequence. Accordingly, we reverse the Court of Special Appeals's judgments in both cases and, instead, hold that the Circuit Court's grants of summary judgment were proper.

JUDGMENTS OF THE COURT OF SPECIAL AP-
PEALS REVERSED; CASES REMANDED TO THAT
COURT WITH INSTRUCTIONS TO AFFIRM THE JUDG-
MENTS OF THE CIRCUIT COURT FOR MONTGOM-
ERY COUNTY; COSTS IN THIS COURT AND THE
COURT OF SPECIAL APPEALS TO BE PAID BY RE-
SPONDENTS (50% BY THE SOLEIMANZADEHS AND
50% BY JOSEPH SOLEIMANZADEH).

ADKINS and McDONALD, JJ., dissent.

McDONALD, J., dissenting, in which ADKINS, J., joins.

I would affirm the decisions of the Court of Special Appeals, largely for the reasons set forth in its reported decision.[1] *See Soleimanzadeh v. Montgomery County,* 208 Md.App. 107, 56 A.3d 349 (2012).

The State Constitution conditions the power of the State and of local governments to take private property for public use on the payment of "just compensation, as agreed upon between the parties, or awarded by a Jury...." Maryland Constitution, Article III, § 40.[2] This Court has described how this provision is a constitutional guarantee of a jury determination—as opposed to a court determination—of just compensation in the absence of an agreement between the parties:

The jury is the tribunal, *and sole tribunal,* by whom the amount of compensation is to be determined.... The [circuit court] has no power to increase or diminish the compen-

---

**1.** I disagree with the Court of Special Appeals, and agree with the Majority opinion, that a jury view is not required in a quick-take proceeding, even if the property owner wishes to have one. *See* Majority op. at pp. 399–401, 82 A.3d at 200–02.

**2.** Several other State constitutional provisions reiterate this protection as against specific government entities. *See, e.g.,* Maryland Constitution, Article III, § 40A (quick-take by Baltimore City, Baltimore, Cecil, and Montgomery counties); Article III, § 40B (quick-take by State Roads Commission). By contrast, while the federal Constitution also guarantees that property will not be taken from public use without just compensation, it does not guarantee a *jury* determination of the amount.

sation awarded by the jury. Its jurisdiction is confined to the confirmation or setting aside the inquisition, and, if set aside, of ordering a new inquisition.

*Baltimore Belt Railroad Corp. v. Baltzell,* 75 Md. 94, 105–06, 23 A. 74 (1891) (emphasis added). A leading authority on eminent domain in Maryland has elaborated on this constitutional right as follows:

> ... A jury trial in a condemnation case is guaranteed by article III, section 40, of the Maryland Constitution presumably for the purpose of ensuring that the "just compensation" contemplated by that section is in fact awarded to owners of condemned property. As a result, a condemnation case is always tried before a jury unless all parties to the suit agree *in writing* to submit the case for determination without a jury.... The upshot of this procedure for selecting the trier of fact is that the property owner, who is the constitutionally protected party, must have his property valued by a jury unless he can persuade the condemnor, the party from whom he is constitutionally protected, to agree to dispense with a jury.
>
> It was undoubtedly contemplated by the framers of article III, section 40 that the best method for protecting the property owner was to entrust the final decision as to the value of condemned property to [a jury]....

Ghinger & Ghinger, *A Contemporary Appraisal of Condemnation in Maryland,* 30 Md. L.Rev. 301, 322–23 (1970) (emphasis in original; citation omitted); *see also* D. Friedman, The Maryland State Constitution: A Reference Guide (2006) at 123 (unlike other factual issues in condemnation cases, "just compensation is a jury issue"). The Maryland Rules for condemnation proceedings likewise reflect this understanding. *See* Maryland Rule 12–207 (condemnation actions "shall be tried by a jury" unless the parties agree in writing to submit to a court determination).[3]

---

3. The requirement of a jury trial without the possibility of summary disposition as a prerequisite to the government's exercise of its sovereignty is not a foreign concept in our constitutions. In the criminal

In reversing the Court of Special Appeals, the Majority opinion holds that a government entity may have the amount of compensation to be paid for property taken by eminent domain determined without either an agreement of the parties as to the amount, or a determination by a jury. The County attorney candidly admitted to the Circuit Court, and to this Court at oral argument, that he could find no case law directly supporting such a holding—in other words, such a holding is unprecedented.[4] The Majority opinion dilutes the guarantee of Article III, § 40, by revising it to interlineate the word "opportunity" into the text of that provision and its implementing rule. Majority op. at pp. 387–88, 389–91, 393, 82 A.3d at 193–94, 195–96, 197.

A corollary of the Majority's holding is that a circuit court may now grant a directed verdict, or judgment under Rule 2–519, if it believes that there is only one reasonable outcome based on the evidence adduced, thereby taking the determination of just compensation away from a jury at trial. At oral argument, counsel for the County initially denied that such a directed verdict would be possible on the issue of value in a condemnation case, but ultimately conceded that it followed from his argument. Counsel's reticence was appropriate. Under this decision, the jury is no longer the "sole tribunal"

---

context, the government may not prosecute a case that threatens a significant deprivation of an individual's liberty without either a jury trial or the individual's agreement—i.e., a plea agreement or agreement to a bench trial. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Kawamura v. State,* 299 Md. 276, 473 A.2d 438 (1984).

**4.** As the Majority opinion recounts, no lawyer appeared for the property owners and we do not have the benefit of whatever arguments would have been made opposing the County's unsupported argument.

It is evident that the County itself had some doubt about the validity of short-circuiting the constitutional right to a jury determination of just compensation in a condemnation proceeding. When it filed its initial summary judgment motion in this case, that motion was addressed to the issues of public purpose and necessity, the amount of the area taken, and the legality of the condemnation proceeding, but *not* the determination of just compensation. Indeed, in its motion, the County itself affirmed that "[i]n a condemnation case, a jury is responsible for determining the amount of just compensation." *See* Majority op. at p. 384 n. 4, 82 A.3d at 192 n. 4.

for the determination of just compensation in eminent domain proceedings. The Majority opinion expresses a desire to discourage the use of summary judgment motions as to value in condemnation cases,[5] but like the old saying about being a "little bit pregnant," either the summary judgment rule applies or it does not. We may be making a sea change in the conduct of eminent domain proceedings. And we are doing it in a case without the benefit of an adversarial presentation.

This decision also renders the jury trial right provided in Article III, § 40 of the Maryland Constitution essentially duplicative of the civil jury trial right provided in Article 23 of the Declaration of Rights. Article 23 guarantees trial by jury on issues of fact in civil proceedings when the amount in controversy exceeds $15,000. Under the Majority opinion's reading of Article III, § 40, the only additional right it guarantees beyond that of Article 23 is a jury determination in condemnation proceedings where compensation is likely to be less than $15,000, which is likely to be a rare occurrence. Under the Majority opinion, Article III, § 40, and presumably the other constitutional provisions that guarantee a jury determination of just compensation, becomes superfluous—a result contrary to the tenets of constitutional and statutory construction. *Johnson v. Duke*, 180 Md. 434, 440, 24 A.2d 304 (1942) (stating the "elementary rule of interpretation" that every clause of the Constitution should be given effect).

Finally, the Majority opinion appears based on the notion that a trial in these cases could only result in adoption of the County's proposed amount of compensation. But the sanctions imposed did not restrict cross examination of the County's witnesses and we do not know what, if any, facts an attorney for the Soleimanzadehs would have elicited from them. The Majority opinion discounts the significance of cross-examination—in particular, the ability of counsel to develop favorable evidence through an opposing witness.

---

**5.** *See* Majority op. at p. 397 n. 8, 82 A.3d at 199 n. 8.

However, any experienced litigator can recount numerous instances in which a party established facts critical to its position through effective cross-examination of an adverse witness. One could certainly imagine that, in an eminent domain case, a lawyer for a property owner might detect an error in the appraisal done by the government's expert, obtain a concession and recomputation from the expert, and thereby prove a different value than what the government had offered. All that is needed is human error, an honest witness, and an astute lawyer. No other "affirmative evidence" would be necessary. This Court has previously endorsed cross-examination as "the greatest legal engine ever invented for the discovery of truth." [6] In the context of an eminent domain case, however, it appears that it is the little engine that couldn't.

Judge ADKINS joins this opinion.

---

6. *Myer v. State,* 403 Md. 463, 477, 943 A.2d 615 (2008) (quoting 5 J.H. Wigmore, Evidence in Trials at Common Law § 1367 (3d ed.1940)).